PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 5/1/96**

TENTH CIRCUIT

JACK L. DOAN, on behalf of himself
and others similarly situated,

      Plaintiff - Appellee,

vs.

No. 95-6180

SEAGATE TECHNOLOGY, INC.,

      Defendant - Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-93-1210-R)

Gary C. Pierson (Tony G. Puckett and Rochelle L. Huddleston with him on the brief), of
Lytle Soulé & Curlee, Oklahoma City, Oklahoma, for Defendant-Appellant.

Mark Hammons of Hammons & Associates, Oklahoma City, Oklahoma, for Plaintiff-
Appellee.

Before BALDOCK, McWILLIAMS and KELLY, Circuit Judges.

KELLY, Circuit Judge.

      Plaintiff-Appellee Jack L. Doan alleges that his employment with Defendant-

Appellant Seagate Technology, Inc. was terminated because of his age in violation of the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, and Oklahoma public policy.[1]  The case was tried to a jury, which returned a verdict in favor of the Plaintiff.  Seagate filed a motion for judgment as a matter of law or a new trial, which was denied by the district court.  This appeal followed.

## I.  Background

Seagate designs, manufactures and markets hard disk drives for computer systems. It has plants in 17 countries and over 30,000 employees worldwide.  Seagate commenced operations in Oklahoma City on October 1, 1989, after purchasing an existing facility from another disk drive company.  The Oklahoma City plant employed approximately 2,000 people.

In June 1991, Seagate's senior management determined that certain cost-containment measures would have to be taken to address an anticipated decline in profit margins.  These measures included a company-wide reduction-in-force ("RIF").  The RIF was not undertaken as a desperate measure, but rather as a strategic business decision aimed at improving the company's position in the highly competitive hard disk drive market.

The initial RIF occurred in July 1991, with a second, smaller RIF in August 1991.

---

[1]        Plaintiff concedes that the intervening case of List v. Anchor Paint Manufacturing Co., 910 P.2d 1011 (Okla. 1996), disallows his state law claim.  In List, the Oklahoma Supreme Court held that Oklahoma does not recognize a wrongful discharge claim predicated on Oklahoma public policy where the plaintiff has a statutory cause of action.  Id. at 1013.

Approximately 1,200 employees were laid off from Seagate nationwide, including fifty-four from Oklahoma City.

Mr. Doan was employed by Seagate at its Oklahoma City plant. Although he did not possess an engineering degree, his job title was Manufacturing Engineer. He was, however, primarily responsible for coordinating the shipment of products and computer test equipment to Seagate's facility in Singapore. Mr. Doan's immediate supervisor was David Howe, Manager of Manufacturing Engineering, who also supervised 25 other employees. Mr. Howe reported to Doug DeHaan, Director of Manufacturing Engineering, who supervised a total of seven managers, all of whom had a number of subordinate employees.

In early July 1991, Mr. DeHaan was informed that a RIF would take place in mid-July. He met with his subordinate managers, including Mr. Howe, advised them of the RIF and explained the RIF selection criteria as performance, potential, and seniority, in that order.

Mr. Howe selected Mr. Doan for the RIF. Mr. Howe testified that he selected Mr. Doan because of his poor performance in the areas of engineering skills, problem solving and communication. Mr. Howe informed Mr. DeHaan of his selection, and Mr. DeHaan gave final approval.

After Mr. Doan was laid off, his position was eliminated. His former job duties were absorbed by the remaining project engineers, and no one was transferred into his

former position or hired to take his place.

## II. Waiver

As an initial matter, Mr. Doan contends that Seagate has waived its right to appellate review by failing to include, among other things, the motion or brief for judgment as a matter of law or a new trial. "When the record on appeal fails to include copies of the documents necessary to decide an issue on appeal, the Court of Appeals is unable to rule on that issue." United States v. Vasquez, 985 F.2d 491, 494 (10th Cir. 1993). Seagate did include the entire trial transcript, as well as the district court's order denying its motion for judgment as a matter of law, or in the alternative, for a new trial, and for remittitur. Because Seagate's appeal is based upon challenges to the evidence and to the sufficiency of the evidence, this is a sufficient record to allow appellate consideration of the issues raised. See 10th Cir. R. 10.1.1, 10.3. In any event, Seagate supplemented the record on appeal with the motion and brief, and we discern no prejudice to the appellees from this submission.

## III. Judgment As a Matter of Law

Seagate moved for judgment as a matter of law at the close of Plaintiff's case and again at the close of the evidence. The district court denied Seagate's motion for judgment as a matter of law though it found Mr. Doan's evidence "pretty thin." Seagate

contends that it should have been granted judgment as a matter of law because Mr. Doan failed to present sufficient evidence to meet his burden of proving intentional age discrimination. We review the denial of a motion for judgment as a matter of law de novo. Considine v. Newspaper Agency Corp., 43 F.3d 1349, 1363 (10th Cir. 1994). We construe the evidence and inferences most favorably to the nonmoving party. Id.

Seagate concedes that Mr. Doan met his initial burden of proving a prima facie case under the McDonnell Douglas standard. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Ingels v. Thiokol Corp., 42 F.3d 616, 621 (10th Cir. 1994) (setting out the prima facie elements in the reduction-in-force context). However, the existence of a prima facie case does not necessarily preclude judgment as a matter of law against the Plaintiff. Cf. Ingels, 42 F.3d at 621-23. As we stated in Fallis v. Kerr-McGee Corp., 944 F.2d 743, 744 (10th Cir. 1991):

> [A]fter a full trial on the merits, the sequential analytical model adopted from McDonnell Douglas . . . drops out and we are left with the single overarching issue whether plaintiff adduced sufficient evidence to warrant a jury's determination that adverse employment action was taken against him on the basis of age.

Seagate has advanced a legitimate, nondiscriminatory reason for its decision to lay off Mr. Doan, namely the company-wide reduction-in-force. The fact finder may only infer discrimination if Mr. Doan produces evidence that the Seagate's proffered explanation is pretextual and unworthy of credence. Ingels, 42 F.3d at 621-22.

Mr. Doan attempted to prove discrimination by attacking the RIF as pretextual.

Mr. Doan does not dispute the existence of a company-wide RIF, but he presented evidence that Seagate was hiring both before and after the RIF, suggesting that Seagate was not actually reducing the size of its workforce. Mr. Doan claimed that the RIF was merely a pretext for pruning away unwanted employees. Speculation, however, will not suffice for evidence.

Mr. Doan's attempt to use Seagate's pre- and post-RIF hirings as evidence of pretext ignores the timing of the hirings. The uncontroverted testimony revealed that no one at Seagate's Oklahoma City plant learned of the RIF until three weeks before it occurred. The fact that Seagate's managers were hiring before they learned of the RIF is irrelevant to proving that the RIF was pretextual. Accord Viola v. Phillips Medical Sys. of North America, 42 F.3d 712, 718 (2d Cir. 1994) (employee's first adverse performance review occurred on the eve of a RIF, but this was not evidence of pretext because the supervisor was unaware of the impending RIF at the time of the review). One person with a job title similar to Mr. Doan's was hired in July 1991, but that person was hired into a highly specialized job in robotics which Mr. Doan admitted was not comparable to his job and which he admitted he was not capable of performing.

Mr. Doan's evidence of Seagate's post-RIF hirings fails to show pretext because the people hired were not similarly situated to him. The evidence reveals that Seagate did not hire anyone for two months after the RIF, and then after hiring a single 49-year-old for a job dissimilar to Mr. Doan's, did not hire anyone for another two months. Seagate

did hire several people beginning in mid-November 1991, more than four months after the RIF, but the evidence reveals that no new Manufacturing Engineers were hired between November 1991 and December 1992. Most of the newly hired individuals were hired for the direct labor pool, which was not subject to the RIF.[2] The fact that a company is hiring accounting clerks shortly after reducing its engineering workforce does not indicate that the engineering RIF is pretextual. Cf. Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 532 (10th Cir. 1994) ("To make a comparison demonstrating discrimination, the plaintiff must show that the employees were similarly situated.").

Mr. Doan attempted to attack the RIF as pretextual by challenging its necessity. To that end, Mr. Doan presented much evidence tending to show Seagate's financial health and profitability. However, as we have noted before, the wisdom of a RIF is not for a court or jury to decide. A RIF is a business decision, and "[t]he ADEA is not a vehicle for reviewing the propriety of business decisions." Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1426 (10th Cir. 1993).

Mr. Doan attempts to rely on Denison v. Swaco Geolograph Co., 941 F.2d 1416 (10th Cir. 1991), for the proposition that business judgment may be challenged by financial evidence. In Denison, the company attempted to justify Plaintiff's termination based on sales figures indicating that Plaintiff's division was less profitable than another.

---

[2]     Seagate classified its employees as either "direct labor" or "indirect labor." Indirect labor included employees performing concept and design work, such as engineering. Direct labor included "hands on" type work, such as facilities maintenance. It was undisputed that only indirect labor employees were at risk during the July 1991 RIF.

The Plaintiff showed this explanation unworthy of credence with evidence that neither the Plaintiff nor his replacement was involved in sales, the sales figures were not truly comparative, the company had strong financial potential, and the company considered the higher employment cost of older employees in deciding who to retain. The Plaintiff in Denison presented considerable evidence of pretext other than mere evidence of financial health. Denison, 941 F.2d at 1421. "'[T]his court will not second guess business decisions made by employers, in the absence of some evidence of impermissible motives.'" Faulkner, 3 F.3d at 1427 (quoting Lucas v. Dover Corp., Norris Div., 857 F.2d 1397, 1403-04 (10th Cir. 1988)). Financial evidence suggesting that a decision, in hindsight, may not have been prudent is not evidence of improper motive; the ADEA is not violated by erroneous or even illogical business judgment. Cf. Sanchez v. Phillip Morris Inc., 992 F.2d 244, 247 (10th Cir. 1993) (Title VII case).

Mr. Doan also seeks to infer pretext from the lack of a formal RIF plan and instructions. However, it was undisputed that the RIF criteria were position elimination, performance, potential, and seniority, in that order. Further, the manner in which a company chooses to conduct a RIF is within the company's sound business discretion, and Mr. Doan has failed to adduce any evidence that the RIF criteria were a pretext for discriminatory motive. Cf. Ingels, 42 F.3d at 623 (company may alter the rules it uses for conducting a RIF).

Mr. Doan contends that "potential" is a subjective criteria and that the use of

subjective criteria creates an inference of discrimination.  See Burrus v. United Telephone Co., 683 F.2d 339, 342 (10th Cir.), cert. denied, 459 U.S. 1071 (1982).  We find this contention unpersuasive.  Even if "potential" is somewhat subjective, the use of subjective criteria does not suffice to prove intentional discrimination.  Pitre v. Western Elec. Co., Inc., 843 F.2d 1262, 1272 (10th Cir. 1988).  Future job potential is certainly something that a company might legitimately want to consider in its RIF decision.  Indeed, Congress has recognized potential as a legitimate factor distinct from age; Congress enacted the ADEA to combat "the setting of arbitrary age limits regardless of potential for job performance."  29 U.S.C. § 621(a)(2) (emphasis added).  Mr. Doan failed to present any evidence that "potential," as interpreted by Seagate's managers, was correlated to age, and even if a correlation between age and potential exists, this would not preclude the use of potential as a selection criteria.  See Hazen Paper Co. v. Biggins, 507 U.S. 604, 611-12 (1993).

Mr. Doan relies heavily on Seagate's 1992 salary forecast and a forced ranking document which was the precursor to the salary forecast as evidence of pretext;  these documents were Mr. Doan's only evidence of specific discrimination against him.  Mr. Doan was listed above five younger employees in both documents.  Doan contends that the ranking was based on the same criteria used in the RIF and thus the employees at the bottom of the list should have been laid off first.  However, this argument ignores the undisputed evidence that Mr. Howe's regular practice was to rank new employees at the

bottom. Mr. Howe automatically placed new employees at the bottom because they had not been there long enough for him to properly evaluate their performance, and the uncontroverted evidence revealed that this had been his regular practice for years. Mr. Doan's evidence confirms this; the people below Mr. Doan on the list had all been employed by Seagate for less than six months. Mr. Doan was ranked last of the employees who were not new hires and had been last in prior years as well.

In light of Mr. Howe's regular listing procedures, the fact that younger, newly hired engineers were listed below Mr. Doan on salary forecast documents is not evidence that he was selected for the RIF because of his age. This court addressed a similar situation in Fallis where all employees rated "4" or "5" were selected for a RIF but first-year employees were not rated and thus were exempt. The Fallis court, reversing a jury verdict in favor of the Plaintiff, found this policy did not raise any inference of age discrimination, stating:

> [A]ge may have entered indirectly into the decision to terminate [the plaintiff], but plaintiff fails to establish that the decision was not controlled by other nondiscriminatory factors. Not evaluating first-year employees when there is no basis upon which to assess their performance does not suggest age discrimination.

Fallis, 944 F.2d at 745. Similarly, in this case Mr. Howe excluded new hires from the RIF because he had not had enough time to evaluate them. See id. Because new hires were automatically placed at the bottom of the salary forecast, the fact that one of the newly hired employees below Mr. Doan was not selected for the RIF instead of Mr. Doan

- 10 -

does not suggest age discrimination.

Further, and perhaps more importantly, there was no evidence that the five employees below Mr. Doan on the list were similarly situated to him. While their job titles may have been similar, it was uncontroverted that the other five employees were degreed electrical engineers, which Mr. Doan was not. Cf. Rea v. Martin Marietta Corp., 29 F.3d 1450, 1458 (10th Cir. 1994) (lower-ranking younger employee was more qualified because he possessed a college degree which plaintiff did not have). Mr. Doan's broad job title encompassed many different types of engineers, and a degreed electrical engineer is not similarly situated to an undegreed industrial engineer who coordinates shipping, even if both have the same job title. Mr. Doan failed to show that he was similarly situated to the younger employees not selected for the RIF, or that his selection was due to his age.

Mr. Doan suggests that age discrimination can be inferred because a greater percentage of older workers were selected for the RIF while a greater percentage of younger people were hired afterwards. While statistical evidence may create an inference of discrimination, the evidence may be so flawed as to render it insufficient to raise a jury question. Fallis, 944 F.2d at 746. "Statistics taken in isolation are generally not probative of age discrimination." Jones v. Unisys Corp., 54 F.3d 624, 632 (10th Cir. 1995). In this case, Mr. Doan's statistical evidence is flawed because it failed to compare similarly situated individuals and failed to eliminate nondiscriminatory reasons for the numerical

disparities.  Mr. Doan's statistics grouped employees together regardless of specialty or skill and ignored the fact that only the indirect labor force was at risk for the RIF while most of the new hires were direct labor.  "'A plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between <u>comparable</u> individuals.'"  <u>Cone</u>, 14 F.3d at 532 (quoting <u>Fallis</u>, 944 F.2d at 746) (emphasis in original).  Statistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference of pretext.  <u>Rea v. Martin Marietta Corp.</u>, 29 F.3d 1450, 1456 (10th Cir. 1994).

After a careful review of the record in this case, we have determined that even in the light most favorable to him, Mr. Doan has failed to produce evidence sufficient to demonstrate pretext and to carry his burden of proving intentional age discrimination.  Accordingly, we hold that the district court erred in denying Seagate's motion for judgment as a matter of law.  Because we find that judgment as a matter of law should be granted in favor of the Defendant, we need not reach the other issues raised in this appeal.

REVERSED and REMANDED for entry of judgment in accordance with this opinion.