**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 31 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JOHN G. RANKIN,

      Plaintiff-Appellant,

v.

PERFECTION EQUIPMENT
COMPANY, an Oklahoma
Corporation,

      Defendant-Appellee.

Nos. 97-6252 & 97-6313
(D.C. No. 96-CV-1968)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **BALDOCK** , **EBEL** , and **MURPHY** , Circuit Judges.


      After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. These cases are

therefore ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

We have consolidated these appeals for purposes of disposition. <u>See</u> Fed. R. App. P. 3(b). In case number 97-6252, plaintiff-appellant John G. Rankin appeals from the district court's entry of summary judgment in favor of defendant-appellee Perfection Equipment Company (PECO) on his complaint pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 (ADEA). In case number 97-6313, Mr. Rankin appeals from the district court's order denying his Fed. R. Civ. P. 60(b)(2) motion for relief from judgment based upon newly discovered evidence. We have jurisdiction, <u>see</u> 28 U.S.C. § 1291, and we affirm.

PECO is a wholesale distributor of truck and automotive parts and equipment. Its business is highly competitive and heavily dependent upon the oil and gas industry. Mr. Rankin began working for PECO in 1957. He left PECO briefly, then returned in 1960 as a salesman of parts and equipment. Mr. Rankin was an "outside salesman;" his sales activities focused on equipment sales to oilfield service companies, truck dealers, and metro area cities.

Mr. Rankin admitted that his best year for sales at PECO was sometime between 1981 and 1983. During the 1980s, he won numerous awards for salesmanship. As his fortunes rose, so did those of PECO's outside sales department. By the late 1980s, PECO had increased its outside sales staff from three salesmen to ten or twelve.

Mr. Rankin retired from PECO in 1990. As part of his retirement package, PECO cashed out his Employee Stock Ownership Plan, paying him over $200,000. It also paid him for accrued vacation time worth over $3,000. After his retirement, PECO employed him as a part-time consultant. His consulting duties principally involved continuing to serve as an outside salesman; however, he also took charge of miscellaneous tasks such as maintenance and reduction of dead inventory.

Beginning in the early 1990s, PECO began to experience financial difficulties. The oil business, on which it depended, had gone flat. PECO did not have a single profitable year between 1991 and 1996. During this time period, PECO drastically reduced its outside sales staff. By 1995, PECO employed only four remaining outside salesmen.

In 1995, in an effort to turn the company around, three of PECO's employees, Peter Voogt, Maura Berney and Chris Simpson, purchased a minority interest in PECO through a leveraged buyout. These new owners became Mr. Rankin's supervisors. During 1995, the new owners began implementing cost-cutting measures. They cut back on expenses and conducted a company-wide reduction in force (RIF).

Although Mr. Rankin had been hired as a part-time consultant, PECO had been allowing him to work full-time. In April, 1995, however, PECO cut

Mr. Rankin's hours back to part time. On October 25, 1995, it terminated

Mr. Rankin's employment as part of the RIF. At the time PECO terminated his

employment, Mr. Rankin was sixty-seven years old. He brought this suit,

contending that PECO discriminated against him because of his age.

**No. 97-6252**

Mr. Rankin challenges the district court's order granting summary judgment

on his ADEA claim. We review the district court's order of summary judgment as

follows:

> Summary judgment is appropriate if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the
> affidavits, if any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to a judgment as
> a matter of law. We review a grant of summary judgment de novo,
> applying the same standard as the district court. We examine the
> record to determine whether any genuine issue of material fact was in
> dispute; if not, we determine whether the substantive law was applied
> correctly, and in doing so we examine the factual record and
> reasonable inferences therefrom in the light most favorable to the
> party opposing the motion. However, where the non moving party
> will bear the burden of proof at trial on a dispositive issue that party
> must go beyond the pleadings and designate specific facts so as to
> make a showing sufficient to establish the existence of an element
> essential to that party's case in order to survive summary judgment.

McKnight v. Kimberly Clark Corp. , ___F.3d___, No. 97-5179, 1998 WL 384608,

at *1 (10th Cir. July 10, 1998) (quotations and citations omitted).

In evaluating ADEA claims where there is no direct evidence of age

discrimination, courts apply the three-stage analysis outlined in McDonnell

Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See McKnight, 1998 WL 384608, at *2. Under this analysis, the plaintiff must first establish a prima facie case of discrimination. See id. Once the plaintiff has met this requirement, the burden of production shifts to the employer, requiring it to provide a legitimate, nondiscriminatory reason for the plaintiff's termination. See id. If the employer satisfies this second step, the burden of production then shifts back to the plaintiff, who must now show either that age was a determinative factor in the employer's decision, or that the employer's explanation was merely a pretext for discrimination. See id. Throughout the analysis, the plaintiff bears the ultimate burden of persuasion. See id.

### 1. Prima facie case of age discrimination

The district court assumed that Mr. Rankin had established a prima facie case. PECO attacks this assumption. In order to establish a prima facie case of age discrimination, a plaintiff typically must show: (1) that he was within the protected age group; (2) that he was doing satisfactory work; (3) that he was discharged; and (4) that his position was filled by a younger person. See id.

PECO argues that Mr. Rankin's work was unsatisfactory. It points to the statement of one if its owners that she would not rehire Mr. Rankin as a salesman if she could restart the company from scratch. There was other evidence,

-5-

however, from which a jury could conclude that he was performing satisfactory work, and thus met this element of the prima facie case.

PECO also argues that Mr. Rankin was not replaced by a younger person; rather, that his position was eliminated during the RIF. Mr. Rankin responds that either he was replaced, or he meets the modified standard for a prima facie case applicable to a RIF.

Mr. Rankin claims that he was replaced either by Bill Sparks or by Tony Hooper. Both Mr. Sparks and Mr. Hooper were hired as outside salesmen after PECO terminated Mr. Rankin's employment. Having reviewed the record, we conclude that neither Mr. Sparks nor Mr. Hooper, individually or collectively, replaced Mr. Rankin. Mr. Rankin's customers were distributed among PECO's salesmen after he left. Neither Mr. Sparks nor Mr. Hooper received a large proportion of his former customers or performed duties substantially similar to Mr. Rankin's.

Mr. Rankin has, however, established a prima facie case under the alternative standard applicable to a RIF. A plaintiff whose position has been eliminated during a RIF may make his prima facie case by showing that "there is some evidence the employer intended to discriminate against [him] in reaching its RIF decision." Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir. 1998). This element may be established through circumstantial evidence that he

was "treated less favorably than younger employees during the RIF." Id. (further quotation omitted).

PECO argues that Mr. Rankin was not treated less favorably than younger employees, because younger employees in other departments also had their positions eliminated during the RIF. Mr. Rankin responds that within his own department, younger outside salesmen were allowed to keep their jobs, while he was not. See Beaird , 145 F.3d at 1167 (stating "a plaintiff who is fired pursuant to a RIF and who held a similar position to a younger retained employee can satisfy the fourth element" of the prima facie case). We agree with Mr. Rankin that he has made a sufficient showing to satisfy the fourth element of his prima facie case. [1]

### 2. Legitimate, nondiscriminatory reason for termination

In response to Mr. Rankin's prima facie case of age discrimination, PECO asserted that it eliminated his position as part of the RIF, which it experienced because of financial difficulties. PECO presented five reasons why it singled out Mr. Rankin's position for elimination during the RIF: (1) Mr. Rankin did not like

---

[1] We reject PECO's argument that Mr. Rankin was treated more favorably than younger employees. PECO argues that it did not cut Mr. Rankin's position until after it had lost six or eight positions held by younger outside salesmen during the time period from 1989 to 1995. PECO failed to establish that these younger salesmen lost their jobs through a RIF, however. As Mr. Rankin points out, the positions may have been reduced through attrition or some other cause.

PECO's new focus on national, large-volume customers; (2) he did not like to travel overnight; (3) he had not yet learned to enter his sales quotes on PECO's computer system; (4) he had not passed PECO's Associate Level I test; and (5) he had the lowest sales of any of the outside salesmen. These reasons were legitimate and nondiscriminatory. The    burden of production therefore shifted back to Mr. Rankin to show that they were pretextual, "i.e., unworthy of belief." Randle v. City of Aurora  , 69 F.3d 441, 451 (10th Cir. 1995).

       3.  Mr. Rankin's showing of pretext

          a.  The RIF

Mr. Rankin first contends that the RIF itself was pretextual. He asserts that PECO's hiring of Bill Sparks, at four times Mr. Rankin's salary, proves that PECO was not having financial difficulties as it claimed. PECO submitted evidence, however, that Mr. Sparks was expected to more than pay for his own salary by bringing new customers with him to PECO. Moreover, we have already determined that Mr. Rankin was not similarly situated to Mr. Sparks. Therefore, the latter's post-RIF hiring does not show that the RIF was pretextual.    See Doan v. Seagate Tech., Inc.  , 82 F.3d 974, 977 (10th Cir. 1996).

PECO presented testimony from its owners that it was in financial difficulties and needed to cut expenses. Mr. Rankin failed to controvert this testimony, other than to argue that it was "biased." PECO also presented its tax

returns, which documented its losses. Mr. Rankin presented no specific documentary evidence to challenge the losses. He has failed to establish that the RIF was pretextual. [2]

### b. Selection of Mr. Rankin's position

We turn next to PECO's specific reasons for selecting Mr. Rankin's position for elimination. PECO asserts that he "did not like and would not accept PECO's new focus on national, larger volume customers." Appellee's Br. at 5-6. Mr. Rankin claims this reason is pretextual, because he was never given the opportunity to pursue larger volume customers.

Christopher Simpson, PECO's president, testified that he had a conversation with Mr. Rankin in the summer of 1995, in which he told Mr. Rankin that PECO needed to refocus on larger customers, and that focusing on smaller customers was not cost-effective. Mr. Rankin responded that he did not think this was the right direction for PECO. Mr. Rankin went on to express his belief to Mr. Simpson that "stopping and seeing everybody while you were there was in the best interest of the company." Appellant's App. Vol. I at 140.

---

[2] Mr. Rankin also relies on an alleged statement by Maura Berney, one of PECO's owners, that "she would not have purchased a company that was in financial trouble." Appellant's Br. at 14. Ms. Berney's actual testimony is significantly different. During her deposition, she was asked "you wouldn't have bought a company that was in financial ruin, would you?" Appellant's App. Vol. I at 117 (emphasis added). Significantly, she responded "I bought a company I thought that if the ownership changed [sic] could be turned around." Id.

Mr. Rankin's uncontroverted statements directly attacked PECO's new customer policy. In light of his expressed attitude toward the new policy, PECO's alleged failure to provide him with an opportunity to serve larger customers is irrelevant.

Mr. Rankin further argues that PECO's alleged change in sales focus to larger customers is itself pretextual. He presented evidence that after he left, PECO assigned many of his smaller-volume customers to its existing sales force. This argument fails to demonstrate pretext, however. Whether PECO's continued sales to Mr. Rankin's former customers were consistent with the new policy is irrelevant. The stated reason for termination was that Mr. Rankin did not like and would not accept the new policy. This attitude is amply supported by his conversation with Mr. Simpson.

PECO's next reason for terminating Mr. Rankin's employment is that he did not like to travel overnight. Mr. Rankin admitted in his deposition testimony that he did not like to travel overnight any more than necessary. In his affidavit, however, Mr. Rankin stated that he did not object to traveling overnight when he worked for PECO. Whether he expressed an objection or not, however, Mr. Rankin did testify that he did not like to travel overnight, which is consistent with PECO's reason for choosing him for the RIF.

PECO also stated that it terminated Mr. Rankin because he had not learned to enter his own sales quotes on PECO's computer system, while the remaining

salesmen had. Mr. Rankin testified that at some point before his termination, he did gain the ability to enter his sales quotes. PECO's owners testified, however, that at the time of Mr. Rankin's termination, they <u>believed</u> he could not enter his orders on the computer. In order to show pretext, Mr. Rankin must show that his employers did not hold this belief in good faith. <u>See</u> <u>McKnight</u>, 1998 WL 384608, at *3 (discussing employer's good faith belief). Mr. Rankin admits that even after he learned how to enter his quotes, in some cases he still handed the quotes written out in longhand to others to enter on the computer for him. He has failed to show that his employers' belief that he was unable to enter the quotes was not held in good faith.

PECO also states that it eliminated Mr. Rankin's position because he had not taken or passed the Associate Level I test. Christopher Simpson testified that to his recollection, appellant had not passed the test at the time of his termination, while the other outside salesmen had. Mr. Rankin argues that Mr. Simpson's recollection is biased, and that there is no proof that he did <u>not</u> pass the test. It is, however, Mr. Rankin's burden to show that PECO's reason is pretextual. He has completely failed to meet this burden.

Finally, PECO says it chose Mr. Rankin for termination because he had the lowest sales of the outside salesmen. Mr. Rankin does not dispute this characterization, but he claims that his sales were low only around the time of his

-11-

termination, and then only because he was placed in a new territory and because PECO confiscated his customer list. At best, these arguments sufficiently challenge only the sales factor. As Mr. Rankin has failed to rebut PECO's other reasons, which provide sufficient criteria for selecting him for the RIF, we conclude that Mr. Rankin has failed to show that PECO's reasons for terminating him were pretextual. Accordingly, we affirm the district court's order of summary judgment.

**No. 97-6313**

Mr. Rankin contests the district court's denial of his Fed. R. Civ. P. 60(b)(2) motion for relief from judgment based upon newly discovered evidence. We review the district court's denial of a Rule 60(b)(2) motion for abuse of discretion. See Joseph v. Terminix Int'l Co. , 17 F.3d 1282, 1285 (10th Cir. 1994). A party seeking relief from judgment based on newly discovered evidence must show

> (1) the evidence was newly discovered since the trial; (2) the moving party was diligent in discovering the new evidence; (3) the newly discovered evidence could not be merely cumulative or impeaching; (4) the newly discovered evidence was material; and (5) that a new trial, with the newly discovered evidence will probably produce a different result.

Id. (quotation omitted).

The district court entered summary judgment on June 13, 1997. On July 9, 1997, Mr. Rankin filed his motion, seeking relief from judgment based upon the

-12-

affidavit of Laurie Westra.  The record indicates that Mr. Rankin was aware of Ms. Westra's identity and last known address as early as February 1997.  He presented evidence of letters that he wrote to Ms. Westra; however, these letters were not written until June 1997.  He presented evidence that he sought to investigate Ms. Westra's address through an information service; the report from the information service, however, is not dated until June 11, 1997, two days before the district court entered its order of summary judgment.  Mr. Rankin fails to show diligence in discovering the new material.  Under the circumstances, we conclude that the district court did not abuse its discretion in denying Mr. Rankin's Rule 60(b)(2) motion.

The judgments of the United States District Court for the Western District of Oklahoma are AFFIRMED.

Entered for the Court

Michael R. Murphy
Circuit Judge