**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 23 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOHN WARREN,

      Plaintiff-Appellant,

v.

LOUIS DREYFUS NATURAL GAS
CORPORATION,

      Defendant-Appellee.

No. 98-6116
(D.C. No. CIV-97-771-T)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **PORFILIO, BARRETT,** and **KELLY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore

ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant John Warren appeals from the district court's order granting summary judgment in favor of defendant-appellee Louis Dreyfus Natural Gas Corporation (LDNG) on Warren's complaint pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 (ADEA). We have jurisdiction, see 28 U.S.C. § 1291, and we reverse the order of summary judgment and remand for further proceedings.

LDNG employed Warren as a geologist from 1987 until it terminated his employment on September 12, 1996. At the time his employment was terminated, Warren was 72 years old and the oldest employee in LDNG's geology department.

Warren's supervisor, Ernest Knirk, claimed that he recommended Warren's termination as part of a reduction in force (RIF). LDNG asserts that it conducted the RIF as part of a shift in focus from developmental drilling to exploratory drilling. LDNG explains that it chose Warren's position for elimination because it involved primarily developmental rather than exploratory drilling.

During the alleged RIF, LDNG also terminated the employment of Barry Wayne Roberts, the third oldest nonsupervisory employee in its geology department. Warren presented evidence that the average age of employees in the department prior to his dismissal was 44.34 years. Warren's figures show that following the RIF, the average age of employees in the geology department

dropped to 39.09 years. Warren thereafter brought this suit, contending that LDNG had illegally discriminated against him because of his age.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's grant of summary judgment de novo, applying the same standard as it applied. See McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998). This standard requires us to examine the record in order to determine whether any genuine issue of material fact was in dispute; if not, we determine whether the district court correctly applied the substantive law. See id. In doing so we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion. See id. Where the nonmovant will bear the burden of proof at trial on a dispositive issue, however, that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment. See id.

In evaluating ADEA claims where there is no direct evidence of age discrimination, courts apply the three-stage analysis outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See McKnight, 149 F.3d

at 1128.  Under this analysis, the plaintiff must first establish a prima facie case of discrimination.    See id.  Once the plaintiff has met this requirement, the burden of production shifts to the employer, requiring it to provide a legitimate, nondiscriminatory reason for the plaintiff's termination.    See id.  If the employer satisfies this second step, the burden of production then shifts back to the plaintiff, who must now show either that age was a determinative factor in the employer's decision, or that the employer's explanation was merely a pretext for discrimination.    See id.

LDNG does not argue that Warren failed to establish a prima facie case.  It asserts, however, that it advanced a nondiscriminatory motivation for terminating his employment.  As mentioned, LDNG claims that it eliminated Warren's position during a RIF necessitated by its change of focus away from developmental drilling.  LDNG further argues that it chose to terminate Warren's employment rather than reassign him, because of his lack of computer skills.  Warren asserts that he has created a genuine issue of material fact concerning whether this explanation was pretextual, entitling him to jury determination of his discrimination claim.    See Randle v. City of Aurora   , 69 F.3d 441, 451 (10th Cir. 1995).

Warren presented sufficient evidence of pretext to justify submission of his case to a jury.  Admittedly, evidence supports LDNG's claim that it shifted its

focus from developmental drilling to exploratory drilling. Other evidence, however, casts doubt upon LDNG's theory that this change in focus resulted in a RIF leading to Warren's termination.

Within one month after Warren was dismissed, Knirk offered a geologist position to a younger man, Tom Creegan. Creegan was 42 years old and had previously worked for LDNG as a consultant. [1] Significantly, there is evidence that LDNG gave Creegan Warren's responsibilities for development work in the Tussy Tatum area of Southern Oklahoma. This was precisely the work which LDNG claimed it was shifting away from when it dismissed Warren. Thus, despite the asserted RIF, at least some of the work Warren had performed for LDNG went on, performed by a younger employee who was hired after his termination.

Warren also notes that LDNG failed to follow its RIF policy. LDNG responds that it is free to choose the manner in which it conducts a RIF. See, e.g., Doan v. Seagate Tech., Inc., 82 F.3d 974, 978 (10th Cir. 1996). This answer misses the point. Warren does not assert that LDNG discriminated against him by failing to follow its RIF policy. Rather, his argument is that LDNG's failure to

---

[1] As LDNG points out, some of Creegan's duties and experience differed from Warren's. Factual issues remain concerning how different the two positions really were. Warren presented evidence that all geologists in Knirk's department worked under the same job description, and that LDNG has a practice of shifting or reassigning duties among its geological staff.

follow the policy, coupled with its hiring of a younger employee who took on a significant part of his former duties, is evidence that the RIF itself was a sham. See, e.g. , Beaird v. Seagate Tech., Inc. , 145 F.3d 1159, 1168 (10th Cir. 1998) (stating plaintiff can show pretext by supplying evidence that the RIF is generally pretextual), petition for cert. filed , 67 U.S.L.W. 2182 (U.S. Aug. 26, 1998) (No. 98-370).

LDNG's official RIF policy calls for a maximum severance payment to exempt employees of twenty-four weeks' pay. Warren's supervisor proposed instead to award him thirty weeks' severance pay. Warren argues that this is proof that LDNG was not conducting a true RIF and, conscious of its wrongdoing, tried to sweeten the pot to get rid of him. He also notes that LDNG offered him a separation payment and offered to rehire him as a consultant, if he would sign a separation agreement that waived his claims under the ADEA. LDNG submits that Warren may not complain of decisions that provided him with benefits beyond those to which he was entitled. Again, this argument misses the thrust of Warren's argument, which concerns whether the alleged RIF itself was pretextual.

Warren also notes that LDNG failed to pursue an analysis of the effect of the RIF on the age of employees in the affected department or office before and after the RIF. He relies on the statement of Nena Pealor, LDNG's representative, that LDNG has a policy of analyzing the age-related effects of its RIF decisions.

For whatever reason, LDNG failed to conduct such an analysis in this case. While such minor departures from LDNG's RIF policy may by themselves be insufficient to create a material issue of fact, this evidence is significant when considered along with the evidence suggesting that the alleged RIF may have been a pretext for LDNG to rid itself of older employees in its geology department.

Contrary to LDNG's representation that it terminated Warren's employment because of his lack of computer skills, Knirk testified that Warren's computer skills played no part in his decision to terminate Knirk's employment. LDNG argues that what Knirk meant was that computer skills had nothing to do with the elimination of Warren's   position  during the RIF. On page twenty of his deposition, however, Knirk was specifically asked and responded as follows:

> Q.  You testified earlier that Mr. Warren's computer skills played no part in your decision to   terminate his employment   ; is that correct?
>
> A.  That's correct.

Appellant's App. at 104 (emphasis added). Despite LDNG's attempt to draw a distinction between Warren's "position" and his "employment" to explain Knirk's testimony, Knirk himself appears to have made no such distinction.

Finally, Warren complains that Knirk made a number of adverse comments to him concerning his age, beginning at the time Knirk first met him and continuing during the time period before he was fired. He claims that Knirk called him a "youngster" at an initial staff meeting and thereafter called him

"young man" or "old timer" and remarked to Warren that he was "moving a little slow today" on several occasions. Appellant's App. at 86, 146-47. LDNG argues that these comments are irrelevant because Knirk did not have the authority to fire Warren and because there is no showing that the comments were related to the termination of Warren's employment. See, e.g., Bolton v. Scrivner, Inc., 36 F.3d 939, 944 (10th Cir. 1994); Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir. 1994).

Whether Knirk had ultimate authority to terminate Warren's employment is not our test. Rather, we ask whether the person who allegedly made ageist comments "participated" in the adverse employment decision. Cone, 14 F.3d at 531; see also Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 397 (7th Cir. 1997) (stating test as whether low-level supervisor had "influence over personnel decisions"), cert. denied, 118 S. Ct. 1795 (1998); EEOC v. Texas Instruments Inc., 100 F.3d 1173, 1181 (5th Cir. 1996) (asking whether employee who made adverse comments had "input into the decision to terminate" employees).

It is undisputed that Knirk was Warren's supervisor and had the responsibility for making recommendations to LDNG's executive committee concerning hiring and firing in its geology department. Knirk testified that the executive committee had never vetoed his decision to fire anyone, and that it had

only vetoed his hiring decision once, on an occasion when the hiring period was closed. Knirk had sufficient input into the employment decision to make his alleged ageist comments evidence of discriminatory intent.

Warren fails, however, to demonstrate that the comments bore the required nexus to the termination decision. See Cone, 14 F.3d at 531. Although the comments were addressed to him, he has not shown that they were related to the decision to terminate his employment. In fact, he has not shown that the comments related to his employment at all. Under the circumstances, therefore, they are not evidence of pretext. Nevertheless, as we have discussed, Warren has shown sufficient other evidence of pretext to avoid summary judgment.

Genuine issues of material fact remain concerning LDNG's motivation for terminating Warren's employment. The judgment of the United States District Court for the Western District of Oklahoma is therefore REVERSED, and this matter is REMANDED for further proceedings in accordance with this order and judgment.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge