**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 17 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JACQULINE BLOCK,

      Plaintiff - Appellant,

vs.

KWAL-HOWELLS, INC., a Colorado
corporation,

      Defendant - Appellee.

No. 03-1101
(D.C. No. 01-N-2097 (MJW))
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY** and **HARTZ**, Circuit Judges and **CASSELL**[**], District Judge.

Plaintiff-Appellant Jacquline Block filed suit against her former employer,

Kwal-Howells, Inc. ("Kwal"), claiming Kwal discriminated against her on the

basis of her sex in violation of Title VII of the Civil Rights Act of 1964 ("Title

VII") and the Equal Pay Act ("EPA"). Kwal moved for summary judgment,

arguing there was no evidence to support a cognizable discrimination claim

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Paul G. Cassell, United States District Judge for the
District of Utah, sitting by designation.

against Kwal. After a thorough analysis, the district court granted Kwal's motion for summary judgment and dismissed Ms. Block's claims. Ms. Block appeals the dismissal of her Title VII claims. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Background

The district court's order contains a detailed recitation of the relevant facts. We therefore only summarize them briefly for our discussion. Ms. Block worked as an employee at Kwal, a Colorado paint manufacturer and distributor, from December 1996 to January 2001. Prior to working at Kwal, Ms. Block primarily worked in an administrative capacity and had no prior experience in the paint industry. She was initially hired to assist both the marketing and sales organizations in administrative matters. Ms. Block's initial salary was $11 per hour, although, as a result of periodic raises, she was making $15.25 per hour in January 2001, or $31,720 per year based on a forty hour work week. Aplt. App. at 38, 298. Ms. Block often worked overtime–900 hours in 2000–and was compensated at a rate of time and a half for those hours over forty in a given workweek. Id. at 140, 241-42.

Mike Dennis, who Ms. Block argues was paid more for similar work, was hired by Kwal in 1995 and held various sales positions, including Salesman,

- 2 -

Assistant Manager, Sales Representative, Sales Manager, and Store Manager. Mr. Dennis had 31 prior years of experience in the paint industry when he was hired at Kwal. Mr. Dennis also received various pay raises, and as of February 2001, he earned $48,000 per year. Id. at 39, 299. As a salaried employee, Mr. Dennis did not receive overtime, although he worked on average sixty to sixty-five hours per week. Id. at 184.

From 1998 until January 2001, Ms. Block was the Administrative Assistant for both the sales and marketing departments. In this capacity, her duties included contact with customers regarding complaints and requests, processing mail, developing various programs, and coordinating special events. In this position, Ms. Block reported to Thomas Stemple, the Vice President of Sales, and Bryan Roughton, the Vice President of Business Development. Because Ms. Block expressed an interest in focusing solely on marketing, the decision was made to shift Ms. Block's sales duties to someone in the sales department so she could focus exclusively on marketing. As a result, Mr. Stemple interviewed Mr. Dennis for the administrative assistant for sales/stores position. In this position, Mr. Dennis was to continue to have a sales territory, take over some of the responsibilities Ms. Block had been covering for the sales department, and assume some of Mr. Stemple's responsibilities as well. Mr. Stemple offered the position to Mr. Dennis in mid-January 2001, with the change in status to be

effective February 5, and Mr. Dennis accepted.

On January 16, 2001, Mr. Roughton informed Ms. Block that she would be receiving a promotion and that she would be working exclusively in the marketing department. Ms. Block was to be paid an additional $2 per hour, making her total annual compensation $35,880 exclusive of overtime, with the potential for an additional raise in April 2001 after she took on some additional duties. On January 26, while in Mr. Stemple's office, Ms. Block saw a "Change of Status" report on his desk that indicated Mr. Dennis's change in position and proposed compensation of $48,000. As a result of this discovery, on January 30, 2001, Ms. Block approached Kwal's Human Resource Director, Sandy Long, and complained about the differences in salaries.

The next morning, January 31, Ms. Block spoke to Mr. Roughton and informed him she would not stay at Kwal unless she also received a salary of $48,000. After Mr. Roughton informed her he was unable to pay her more than her previously discussed salary due to budgetary restraints, Ms. Block went to her desk and drafted a resignation letter. She gave the letter to Ms. Long and Mr. Roughton at approximately 8:10 a.m. Aplt. App. at 371. She refused to speak with Ms. Long, cleared her desk, and left the office.

On February 1, Ms. Block met with Ms. Long and Miles Tunno, Kwal's president. Mr. Tunno informed Ms. Block that he would accept her resignation.

She refused to update Mr. Roughton on the status of her work, and she left the meeting. After filing a complaint with the EEOC, Ms. Block filed this action against Kwal, alleging various claims under Title VII and the EPA.

Ms. Block asserts the district court erred in (1) holding she failed to establish a prima facie case of sex-based pay discrimination under Title VII, (2) holding she was not constructively discharged, and (3) failing to hold a trial on the issues of damages and attorney's fees under Title VII.

Discussion

We review the district court's grant of summary judgment de novo, "applying the same standards used by the district court." Byers v. City of Albuquerque, 150 F.3d 1271, 1274 (10th Cir. 1998). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The factual record and reasonable inferences therefore are viewed in the light most favorable to the party opposing summary judgment." Byers, 150 F.3d at 1274.

Ms. Block first appeals the district court's dismissal of her Title VII sex-

based pay discrimination claim. Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex," or "to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities" because of the individual's sex. 42 U.S.C. § 2000e-2(a)(2). "In a Title VII case, the initial burden is on the employee to make a prima facie showing of discrimination by the employer." Nulf v. Int'l Paper Co., 656 F.2d 553, 557 (10th Cir. 1981) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Ms. Block must establish a prima facie case of sex-based pay discrimination "by showing that she occupies a job similar to that of higher paid males." Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1363 (10th Cir. 1997) (internal quotation marks and citations omitted). The burden is on the plaintiff to show she is similarly situated to the employee with whom she is comparing herself. Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 532 (10th Cir. 1994).

The district court concluded Ms. Block failed to establish a prima facie case of discrimination because she failed to prove she occupied a substantially similar position to Mr. Dennis. Aplt. Br., Att. A. at 26. Upon a thorough review of the evidence, we agree. Ms. Block and Mr. Dennis were not similarly situated.

See Aramburu v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997).[1]  Ms. Block

and Mr. Dennis each had very different backgrounds and brought different levels

of experience and knowledge to their positions.  See id.  In her position prior to

the promotion, Ms. Block's time was split between both the marketing and sales

department, while Mr. Dennis only worked in sales under the direction of Mr.

Stemple.  After the promotions, Ms. Block and Mr. Dennis would have worked

for different departments, with different supervisors and independent budgets.

See id.  Most importantly, the positions entailed different types of work.  Ms.

Block's responsibilities were more administrative and customer service based,

while Mr. Dennis's position involved outside sales and required more technical

---

[1]Ms. Block argues she suffered wage discrimination from November 1998 to January 2001, based on the salary Mr. Dennis was to receive beginning February 5.  Aplt. Reply Br. at 11.  Ms. Block therefore asserts the correct comparison is between Mr. Dennis's new position as administrative assistant to sales and stores and her former position when she worked as an administrative assistant to both sales and marketing.  Ms. Block argues for damages based on the approximately two years prior to January 2001 in which she alleges pay discrimination.  Ms. Block conceded at oral argument, however, that in her EEOC charge she only alleged pay discrimination based on Mr. Dennis's compensation as compared with the compensation she was to receive in her new position.
Kwal argues Ms. Block's claim of discrimination is limited to alleged discrimination based on the respective January 2001 offers.  Aplee. Br. at 2.  Thus Kwal asserts we have no jurisdiction to adjudicate any claims related to compensation prior to January 2001.  Id. at 1.  We need not resolve this issue.  Whether we compare Mr. Dennis's new position with Ms. Block's prior position or her position after the restructuring, our conclusion is the same.  The jobs are not similar, and therefore Ms. Block fails to establish a prima facie case of employment discrimination.

paint knowledge.

Ms. Block attempts to argue similarity based on the position titles, her sales responsibilities with regard to the business to business and realtor programs, a few common responsibilities such as working with special quotes and the Visual Painter program, and the fact Mr. Dennis was to take over responsibility for several of her former duties.[2] These arguments only go so far when the actual job functions are considered. Similar titles alone do not satisfy the requirement of similarity between jobs. See Doan v. Seagate Tech., Inc., 82 F.3d 974, 979 (10th Cir. 1996). In addition, the evidence is undisputed that the business to business accounts are very different than the outside sales contracts. Aplt. Br. at 212, 215. Pointing to a few commonalities such as working with a particular program (e.g. Visual Painter) also does not transform an otherwise dissimilar job into a similar one. Finally, the fact Mr. Dennis was to assume Ms. Block's sales responsibilities does not make his position similar to hers. There is no evidence that his new position would be limited to a mere subset of her duties. There is substantial evidence, however, that he had additional responsibilities that were different than Ms. Block's, including continuing outside sales, addressing

_____

[2]To the extent Ms. Block argues evidence of Mr. Dennis's duties during the period directly following her resignation illustrates the similarity between the positions, she ignores the evidence that some short term restructuring was required to cover for her position following her resignation. Aplt. App. at 174, 189.

- 8 -

technical questions, and taking on various responsibilities from Mr. Stemple. Aplt. App. at 163, 164, 196.  As much as Ms. Block attempts to argue otherwise, no reasonable trier of fact could conclude Ms. Block and Mr. Dennis were similarly situated.

Ms. Block argues other evidence supports the conclusion she was treated less favorably based on her sex.  She points to evidence that Mr. Roughton, her supervisor, threatened to quit on a few occasions and was given time off work to think about it by Mr. Tunno.  Aplt. Br. at 29.  There is no evidence that Mr. Roughton tendered a final written resignation, as did Ms. Block, however, and the situations are not comparable.  See Aplt. App. at 262.  We agree with the district court's conclusion that Ms. Block failed to establish a prima facie case of pay discrimination.[3]

---

[3]Neither the district court in its order nor the parties in their briefs before this court focus on the second prong of the prima facie case, which requires the plaintiff to show that her comparator was paid at a higher rate. Sprague, 129 F.3d at 1363.  We note that Ms. Block fails to establish this element of the prima facie case as well.  Mr. Dennis was to be compensated at a flat salary of $48,000 in his new position, and was expected to continue to work his usual 60-65 hours per week.  Ms. Block received $15.25 per hour in her position as of January 2001, or $31,720 per year.  In 2000 she worked 900 hours of overtime, or approximately 58 hours per week.  Based on this amount of overtime, her yearly compensation was approximately $52,308.  Ms. Block was to receive $17.25 per hour after her promotion, or $35,880 based on a 40 hour work week, and she would still be eligible for overtime.  Aplt. App. at 100-01.  Although she expected some decrease in the number of hours of overtime she would be working, the position was still expected to include overtime.  Id. at 238, 242.  If she had continued at the pace of overtime she worked in 2000, her yearly salary would have been

In addition to her pay discrimination claim, Ms. Block also asserts a retaliation claim under Title VII. Retaliation is a separate discriminatory offense under Title VII. See 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, Ms. Block must show that "(1) she engaged in protected activity under Title VII or the ADEA; (2) she subsequently suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." Wells v. Colo. Dept. of Transp., 325 F.3d 1205, 1212 (10th Cir. 2003). Ms. Block asserts that she suffered an adverse employment action because she was constructively discharged in retaliation for lodging a complaint regarding her unequal pay. She appeals the district court's determination that she was not constructively discharged.

"An employee who is not formally discharged from employment may still be constructively discharged if the employee was forced to quit due to [gender]-based, intolerable working conditions." Bolden v. PRC, Inc., 43 F.3d 545, 552 (10th Cir. 1995). Thus constructive discharge qualifies as an adverse employment action under Title VII. Constructive discharge exists under Title VII when "'a reasonable person would view the working conditions as intolerable,'" Hirschfeld v. N.M. Corr. Dep't, 916 F.2d 572, 580 (10th Cir. 1990) (quoting Derr v. Gulf Oil

---

approximately $59,168. In addition, Ms. Block expected to receive an additional raise in April 2001. Id. at 100.

- 10 -

<u>Corp.</u>, 796 F.2d 340, 343 (10th Cir. 1986)), and "the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign," <u>Derr</u>, 796 F.2d at 344.

Ms. Block argues she was constructively discharged because she was subject to intolerable working conditions and discriminatory actions such that she was compelled to resign. She argues comments, jokes, and inappropriate language in the workplace constituted aggravating factors that made staying on the job intolerable. <u>See</u> Aplt. Br. at 29. Ms. Block attempts to combine this alleged conduct with the events of January 30 through February 1 to bolster her argument that her working conditions were intolerable. <u>See</u> <u>Bennett v. Quark, Inc.</u>, 258 F.3d 1220, 1229 (10th Cir. 2001) (requiring aggravating factors in addition to a discriminatory action such as failure to promote in order to show the job was intolerable). However, no reasonable jury could conclude based on the evidence presented that Kwal subjected Ms. Block to working conditions so intolerable that she was forced to resign.

There is no evidence that Ms. Block made a complaint about the language or comments to a supervisor or manager while employed at Kwal. Aplt. App. at 117. Ms. Block did not refer in her letter of resignation to such conduct or to a hostile work environment generally; rather, she focused solely on her concerns

regarding her new position. Aplt. App. at 98-99. In fact, in her EEOC complaint, Ms. Block stated "I would like to state that it has been really hard for me to leave Kwal-Howells. I enjoyed the people that I worked for." Id. at 107. It was in the week after her discovery that Ms. Block became angry and upset with her situation at Kwal. Id. at 103. No reasonable jury could conclude the comments, language, and jokes Ms. Block refers to constitute aggravating factors that made staying in her position intolerable. See Bennett, 258 F.3d at 1230 (finding statements inappropriate but insufficient to show the existence of pervasive bias in the workplace).

It is clear Ms. Block was unhappy during her final days at Kwal as a result of what she perceived to be unequal treatment. See Aplt. Br. at 23-28. However, "not every unhappy employee has an actionable claim of constructive discharge pursuant to Title VII." Bolden, 43 F.3d at 552; see also Heno v. Sprint/United Mgmt. Co., 208 F.3d 847, 858 (10th Cir. 2000); Sanchez v. Denver Pub. Sch., 164 F.3d 527, 534 (10th Cir. 1998). Ms. Block must allege "facts sufficient to demonstrate under an objective test that a reasonable person would have viewed her working conditions as intolerable." Jeffries v. Kansas Dep't of Soc. and Rehab. Servs., 147 F.3d 1220, 1233 (10th Cir. 1998). She must show she had "'no other choice but to quit.'" Yearous v. Niobrara Cty. Mem'l Hosp., 128 F.3d 1351, 1356 (10th Cir. 1997) (quoting Woodward v. City of Worland, 977 F.2d

- 12 -

1392, 1401 (10th Cir. 1992)).

Although we do not foreclose the possibility of intolerable working conditions arising over the span of a few days, in this case the evidence does not support this conclusion. Ms. Block made a complaint with regard to the difference in pay, had an argument with her supervisor the next day that became a "little volatile," Aplt. App. at 105, and immediately tendered her resignation. "If an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged." Jeffries, 147 F.3d at 1233. Rather than supporting that her resignation was compelled, the evidence supports the conclusion Ms. Block resigned of her own free will. The conditions at Ms. Block's workplace were not "such that a reasonable employee would have felt they had no choice but to quit," Heno, 208 F.3d at 858, and therefore the district court properly determined Ms. Block was not constructively discharged.

Ms. Block asserts that even if we find she was not constructively discharged, she is still entitled to recover damages under Title VII up until her resignation date, plus attorney's fees, for the alleged pay discrimination she experienced for approximately two years prior to January 2001. This argument fails. Ms. Block cites cases regarding the calculation of damages when a plaintiff establishes discrimination by his or her former employer, but nevertheless quits

rather than suffering constructive discharge. See Derr, 796 F.2d at 342; Swanson v. Colorado Dept. of Health, 773 F. Supp. 255, 257 (D. Colo. 1991). These cases are inapplicable because Ms. Block has not established discrimination. Ms. Block has failed to present sufficient evidence of discrimination, and therefore the district court properly awarded Kwal summary judgment.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge