**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 29 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOSEPH R. BYERS, JR.; DOUGLAS
P. BENCY; and DANIEL R.
FRAMPTON,

      Plaintiffs-Appellants,

v.

CITY OF ALBUQUERQUE, a
Municipal Corporation; BOB V.
STOVER, Chief of Police; RICHARD
CAMPBELL, Deputy Chief of Police;
DEBORAH MARTINEZ, Human
Resources Department; and JOSEPH
M. POLISAR, Chief of Police,

      Defendants-Appellees.

No. 96-2255

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-95-1141-JC)

Steven K. Sanders, Albuquerque, New Mexico, for Plaintiffs-Appellants.

Bruce T. Thompson, Assistant City Attorney, City of Albuquerque, Albuquerque,
New Mexico (Robert M. White, City Attorney, City of Albuquerque, with him on
the brief), for Defendants-Appellees.

Before **PORFILIO, LUCERO,** and **MURPHY,** Circuit Judges.

**MURPHY**, Circuit Judge.

Joseph Byers, Douglas Bency, and Daniel Frampton (collectively "Plaintiffs"), white male police officers, brought suit against their municipal employer, the City of Albuquerque, and its agents, Chief of Police Joseph Polisar, former Chief of Police Bob Stover, Deputy Chief of Police Richard Campbell, and Human Resources Department Director Deborah Martinez (collectively "Defendants"). They allege Defendants failed to follow their own rules and regulations and discriminated against Plaintiffs on the basis of race and sex through the implementation of improper affirmative action policies during the 1993 Sergeants' Promotional Process, in violation of Title VII, the Due Process and Equal Protection Clauses of the United States Constitution (42 U.S.C. § 1983), and 42 U.S.C. § 1981. Plaintiffs also allege that a Mock Assessment Center conducted by Campbell in order to prepare candidates for the promotional process violated their due process and equal protection rights. Finally, Plaintiffs state claims under New Mexico law for a breach of contract and a breach of the covenant of good faith and fair dealing based on the same alleged discriminatory conduct.

Defendants filed three summary judgment motions. First, Defendants moved for summary judgment on all claims challenging the procedure used in the

1993 Sergeants' Promotional Process based on Plaintiffs' lack of standing. Second, Defendants moved for summary judgment on the claim that the Mock Assessment Center was conducted in violation of Plaintiffs' civil rights. Third, Polisar, who became Chief of Police after the alleged wrongful conduct occurred, moved for summary judgment on the claims against him, arguing that Plaintiffs could not state a civil rights claim based on his failure to rectify alleged wrongdoings that occurred before he became Chief of Police. The district court granted all three summary judgment motions and Plaintiffs appeal. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and affirms.

## BACKGROUND

In 1993, Plaintiffs applied to be promoted to Sergeant. Promotions to the position of Sergeant within the Albuquerque Police Department are made from the Sergeants' Promotional List. The list is created by a two-stage competition among eligible officers. The first stage is a written examination and the second stage is an oral examination, known as the "Assessment Center." Only those employees who achieve a certain score on the written examination are advanced to the Assessment Center portion of the process.

Before the written examination, Defendants announced that the 35 officers with the highest written examination scores, plus those who tied at the cutoff score, would proceed to the Assessment Center portion of the Sergeants'

Promotional Process. Defendants further announced that the 25 officers with the highest combined scores from the written test and the Assessment Center would be placed on the Sergeants' Promotional List.

The written examination was administered in August 1993. Because of a tie on the written examination, 36 officers qualified to proceed to the Assessment Center portion of the process. Approximately two weeks after the examination, however, Defendants announced that the final promotion list would be expanded from 25 to 30 officers and that the 40 officers with the highest written examination scores, plus those who tied at the cutoff score, would proceed to the Assessment Center. Because six officers tied for thirty-seventh place on the written examination, 42 officers proceeded to the Assessment Center. The six officers who were allowed to proceed to the Assessment Center pursuant to the expansion of the promotional list consisted of one Hispanic male, one Hispanic female, one Native American female, and three white males. Stover, who was Chief of Police during the promotional process, represented that the Sergeants' Promotional List was expanded upon a review of the departmental needs.

Based on their written examination scores, Plaintiffs all proceeded to the Assessment Center and would have so qualified even if the candidate pool had not been expanded to include six additional officers. Plaintiffs finished the promotion process with final rankings of 35, 40, and 41. Thus, none of the

plaintiffs made the final Sergeants' Promotional List of 30 officers. Of the six officers who became eligible to participate in the Assessment Center as a result of the expansion of the promotion list, four made the Sergeants' Promotional List, including two white males. The remaining two officers, who did not make the list, finished thirty-ninth and forty-second in the promotional process. If the six additional officers were deleted from the rankings, Plaintiffs would have finished with ranks of 31, 35, and 36. Plaintiffs therefore would not have made the original proposed list of 25. One of the individuals who made the Sergeants' Promotional List, however, subsequently left the Albuquerque Police Department. The officer ranked thirty-first was thus placed on the list.

Before the actual Assessment Center was conducted and at the request of one of the candidates, Campbell conducted a Mock Assessment Center. Campbell did not invite anyone to participate, but merely received requests to participate. Campbell originally planned to limit the number of participants to ten. Because only eleven candidates asked to participate, however, all eleven were accepted. The individuals who assisted Campbell in conducting the Mock Assessment Center did so voluntarily and without pay. The Mock Assessment Center was, however, conducted on city property and some of the participants were on duty at the time it was conducted.

Polisar, who became Chief of Police after the 1993 Sergeants' Promotional Process was completed, was asked to investigate allegations of misconduct associated with the process. A memo from Polisar to Chief Administrative Officer Lawrence Rael[1] stated that Martinez recommended the cutoff score for the written test be lowered for "Affirmative Action reasons" and that as a result of the change two Hispanics, one Native American, and two females were added to the Assessment Center pool. Additionally, the memo reported that "participation by the command staff in mock assessment centers gives the appearance of impropriety." The memo said that these acts would not be allowed in the future. Polisar took no other actions to rectify allegedly improper conduct which occurred during the 1993 Sergeants' Promotional Process.

This court reviews the grant of summary judgment *de novo*, applying the same standards used by the district court. *See Concrete Works of Colo., Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the

_____

[1]The admissibility of this memo is contested by Defendants.

party opposing summary judgment. *See Concrete Works of Colo., Inc.*, 36 F.3d at 1517.

## STANDING

Defendants argue that Plaintiffs lack standing to bring claims based on 1993 Sergeants' Promotional Process. Standing is "an essential and unchanging part" of the Article III case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

> It has been established by a long line of cases that a party seeking to invoke a federal court's jurisdiction must demonstrate three things: (1) injury in fact, by which we mean an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury fairly can be traced to the challenged action of the defendant, and has not resulted from the independent action of some third party not before the court; and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the prospect of obtaining relief from the injury as a result of a favorable ruling is not too speculative.

*Northeastern Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 663-64 (1993) (internal quotations and citations omitted); *see also Lujan*, 504 U.S. at 560-61. These three elements of standing are the "irreducible minimum" required by the Constitution. *Northeastern Fla. Chapter of the Associated Gen. Contractors of Am.*, 508 U.S. at 664 (internal quotation omitted). With respect to their claims challenging the 1993 Sergeants' Promotional Process, Plaintiffs argue, for purposes of standing, that they were

-7-

injured both because they were not promoted and because they were not allowed to compete on an equal basis.

Plaintiffs have not shown a causal relationship between their failure to be promoted and the challenged conduct. Even absent the alleged affirmative action policies, Plaintiffs would not have made the Sergeants' Promotional List. The undisputed facts show that had the six additional candidates not participated in the Assessment Center, the highest-ranking plaintiff would have placed thirty-first and therefore would not have made the original proposed Sergeants' Promotional List, which was to include 25 officers. Nor were Plaintiffs' chances of making the list hindered by the expansion of the list and the corresponding expansion of the pool of candidates proceeding to the Assessment Center. The expansion of the pool of candidates by six officers was offset by the increase of the Sergeants' Promotional List from twenty-five to thirty officers.[2] Because Plaintiffs cannot demonstrate a causal relationship between their failure to make the Sergeants' Promotional List and the alleged affirmative action policies, Plaintiffs do not

---

[2]From a statistical standpoint, Plaintiffs' chances of making the final list slightly improved as a result of the expansion. Under the original proposal, 25 of 36 officers would have made the list, or approximately sixty-nine percent of the applicants proceeding to the Assessment Center. As a result of expanding the list and candidate pool, 30 of 42 officers made the list, or approximately seventy-one percent of the applicants proceeding to the Assessment Center.

have standing to challenge their failure to make the list.[3] *See Grahek v. City of St. Paul, Minn.*, 84 F.3d 296, 298-99 (8th Cir. 1996) (holding plaintiffs lacked standing to challenge hiring system which allowed protected-class applicants greater opportunity to be included in certified list from which hires were made because "[e]ven if no persons from the separate group of protected-class applicants had been included in the certified lists . . . none of the three plaintiffs would have been placed on those lists").

Plaintiffs also maintain, however, that they need not show they would have been promoted absent the alleged affirmative action policies to have standing to challenge the Sergeants' Promotional Process. Instead, they assert they also have standing because "the score was lowered for minority persons" and they were

---

[3]Plaintiffs assert that if Defendants had expanded the Sergeants' Promotional List without expanding the pool of candidates eligible for the Assessment Center portion of the process, the highest ranking of the three plaintiffs, who would have ranked thirty-first if the six additional candidates were eliminated, would have ultimately been placed on the list, after one of the officers originally placed on the list of 30 left the Police Department. This court rejects Plaintiffs' implicit contention that the expansion of the final list may be considered independently from the expansion of the pool of candidates. There is no evidence that the list would have been expanded in the absence of the expansion of the candidate pool. To the contrary, the expansion of both the list and the candidate pool was part and parcel of the same announcement. To the extent that Plaintiffs challenge as pretextual Stover's assertion that the change in the promotional process was made pursuant to perceived departmental needs, this challenge applies equally to the expansion in the number of officers advanced to the Assessment Center as it does to the expansion in the number of officers making the final list. Plaintiffs' hypothetical thus fails to support their standing.

therefore denied equal treatment. In support, they rely on *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, Florida*, 508 U.S. 656 (1993). In *Associated General Contractors*, the Supreme Court held that an association of general contractors had standing to challenge an ordinance giving preferential treatment to certain minority-owned businesses in awarding city contracts, even though the association could not prove that one of its members would have been awarded the contract but for the challenged ordinance. *See id.* at 664-69. Relying on its precedents, the Court stated:

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

*Id.* at 666.

Similarly, in *Regents of University of California v. Bakke*, 438 U.S. 265 (1978) (plurality opinion), Justice Powell, joined by four other Justices, concluded that even if the plaintiff, a white male medical school applicant, could not demonstrate he would have been admitted to medical school absent a special program which reserved 16 of the 100 places in the entering class for minority applicants, he was injured by denial of the opportunity to compete for all 100 places and therefore had standing to challenge the admission program. *See id.* at

280 n.14. This circuit has likewise held that the denial of the opportunity to compete on an equal basis constitutes an injury in fact sufficient to provide standing. *See Concrete Works of Colo., Inc.*, 36 F.3d at 1518-19. In *Concrete Works*, this court held that a contractor did not need to show that it would have received a contract but for the challenged ordinance; instead, the contractor had standing because it had bid on contracts subject to the ordinance and "the [o]rdinance prevented it from competing on an equal basis with minority and women-owned prime contractors." *Id.* at 1518.

These cases all stand for the proposition that when a plaintiff is denied the opportunity to compete on an equal basis because of that plaintiff's race or gender, the denial of the opportunity to compete on equal footing constitutes an injury in fact for standing purposes. In this case, Plaintiffs have not been excluded from full consideration because of their race or gender. Nor were Plaintiffs disadvantaged in the process by their race or gender.

The alleged discriminatory action in this case was lowering the written test score required to proceed to the Assessment Center by one point. It is undisputed that the qualifying score was lowered for both minority and non-minority applicants; of the six candidates added pursuant to the change, three were white males. While lowering the score allowed more officers to compete in the Assessment Center portion of the competition, there is no allegation that race or

-11-

gender was a factor in scoring either the written examination or the Assessment Center portion of the competition. Nor do Plaintiffs contend that minority candidates with lower combined scores made the Sergeants' Promotional List over higher scoring white male candidates. Instead, the final list was composed of the thirty candidates who had the highest combined scores. Even assuming the pool of candidates proceeding to the Assessment Center was expanded for improper reasons,[4] Plaintiffs have not alleged that they were denied the opportunity to compete on an equal footing with minority candidates. Because Plaintiffs have failed to show they were harmed by the alleged affirmative action policies, they lack standing to challenge the 1993 Sergeants' Promotional Process under either federal or state law.[5]

---

[4]Because this court holds Plaintiffs do not have standing to challenge the 1993 Sergeants' Promotional Process, we need not consider the admissibility of the memo which they rely on as evidence of Defendants' improper motive.

[5]On appeal, Plaintiffs also allege that their contractual rights, due process rights, and rights to good faith and fair dealing were violated because they were not granted a hearing regarding Defendants' decision to alter the number of candidates proceeding to the Assessment Center after the written examination was administered. Plaintiffs have not shown they were entitled to a hearing. Moreover, even if Plaintiffs were entitled to a hearing, Plaintiffs have not shown how they were injured by the denial of such a hearing. If Plaintiffs had successfully challenged the alleged affirmative action policies at a hearing, they still would not have been placed on the Sergeants' Promotional List because the original list was to include only 25 officers. Thus, they do not have standing to challenge the Sergeants' Promotional Process based on Defendants' failure to grant them a hearing.

**MOCK ASSESSMENT CENTER**

Plaintiffs also bring claims based on the Mock Assessment Center.

Specifically, they allege:

> The Plaintiffs were treated differently than similarly situated persons. Defendant Richard Campbell with the knowledge and approval of Defendant Bob V. Stover selected certain officers for preferential treatment by allowing them to attend promotional training sessions that were taught by personnel who were either directly involved in the promotion assessment or were assessors themselves and not allowing all officers, including Plaintiffs to attend that training[.] If persons under the same circumstances and conditions are treated differently because of their race or sex, there is arbitrary discrimination, and not classification.

In response to Plaintiffs' allegations regarding the Mock Assessment Center, Defendants moved for summary judgment on two grounds. First, Defendants asserted that "every officer who asked to take part in the training was allowed to participate without regard to race, gender or national origin." Second, Defendants argued that the center was not conducted under the color of state law.

In support of their summary judgment motion, Defendants submitted an affidavit from Defendant Campbell. Campbell testified, among other things, that he "was asked by one of the candidates selected to go to the assessment center to put on a mock assessment center"; that "[p]rior to this request [he] had no intention of putting on [a mock] assessment center"; that he "agreed to put on the center and originally intended to limit the number of participants to ten"; that he "invited no individual to participate in the center but received requests from

-13-

officers and on behalf of officers"; that "[b]ecause only eleven candidates asked to participate in the mock assessment center [he] accepted as a participant everyone who contacted [him] about being in a mock assessment center"; and that he "accepted all the eleven officers who approached [him] about being in a mock assessment center without regard to sex, race or national origin."

In response to Defendants' motion for summary judgment, Plaintiffs did not dispute the above testimony. Instead, they asserted that the Mock Assessment Center had a limited number of participants, was conducted under color of state law, and served to benefit a few officers to the detriment of other officers.

The fact that the practice assessment center benefitted some officers to the detriment of others is insufficient to support Plaintiffs' claims that the Mock Assessment Center was conducted in a discriminatory fashion. Plaintiffs have not disputed that every officer who asked to participate in the Mock Assessment Center was allowed to participate, regardless of race, sex, or national origin. Plaintiff Frampton actually participated in the first day of the Mock Assessment Center, although he stated that while he was not turned away, he "was made to feel unwelcome and uncomfortable." Plaintiff Byers testified that he made a conscious decision not to participate. Thus, the only plaintiff who did not make a conscious choice regarding his participation was Plaintiff Bency, who testified that he did not learn about the Mock Assessment Center until after the fact.

Frampton's testimony that he felt "unwelcome and uncomfortable" and Bency's testimony that he did not have knowledge that the Mock Assessment Center was being conducted is insufficient to support an inference that Defendants acted in a discriminatory manner in conducting the Mock Assessment Center. *Cf. Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1418 (10th Cir. 1993) ("Conclusory statements are insufficient to defeat a motion for summary judgment."). Plaintiffs have not offered any other evidence which would support an inference that Defendants' asserted non-discriminatory basis for selecting participants, namely their requests to participate, was pretextual, or that Defendants otherwise discriminated in conducting the Mock Assessment Center.

Because Plaintiffs have not offered any evidence that the Mock Assessment Center was conducted in a discriminatory manner and have not disputed Campbell's testimony that everyone who requested to participate was allowed to participate in the practice assessment center, there is no genuine issue of material fact whether the Mock Assessment Center violated Plaintiffs' due process and equal protection rights. Similarly, there is no genuine issue of material fact whether the practice assessment center constituted preferential treatment in violation of Plaintiffs' rights to good faith and fair dealing because everyone who

asked to participate was allowed to participate. The district court therefore appropriately granted summary judgment in favor of Defendants.[6]

## CONCLUSION

The judgment of the United States District Court for the District of New Mexico is **AFFIRMED**.

---

[6]Because this court affirms the district court's grant of summary judgment based on Plaintiffs' failure to raise a genuine issue of material fact regarding the alleged discriminatory nature of the Mock Assessment Center, we need not decide whether the Mock Assessment Center was conducted under color of state law.

Additionally, this court does not consider Defendant Polisar's motion for summary judgment. Because Plaintiffs lack standing to challenge the 1993 Sergeants' Promotional Process, they cannot maintain an action against Polisar for failure to rectify alleged wrongful conduct which occurred during the process. Similarly, to the extent Plaintiffs assert a claim against Polisar based on his failure to rectify alleged wrongful conduct which occurred during the Mock Assessment Center, our conclusion that Plaintiffs have not raised a genuine issue of material fact as to whether the practice assessment center was conducted in a discriminatory fashion precludes a claim against Polisar for failure to rectify such conduct. Our affirmance of Defendants' other two summary judgment motions thus resolves all of Plaintiffs' claims against Polisar.