**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 23 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

REYNALDO S. VILLARREAL,

    Plaintiff-Appellant,

v.

JOHN HARRISON; LT. FELTZ, SIS
U.S.P. FLORENCE,

    Defendants-Appellees.

No. 99-1268

(D.C. No. 97-N-1352)
(D.Colo.)

**ORDER AND JUDGMENT** *

Before **ANDERSON, KELLY** and **BRISCOE,** Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Reynaldo Villarreal, a federal inmate appearing pro se, appeals from an order of the district court granting summary judgment in favor of the defendant

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

prison officials with respect to Villarreal's claims asserted under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

This case arises out of the efforts of prison officials at the United States Penitentiary in Florence, Colorado, to control violent gang activity and protect inmates from physical harm. On February 14, 1996, four inmate members of two rival prison gangs, the Mexikanemi and the Mexican Mafia, were involved in a physical altercation during which weapons were used. Three of the four inmates were physically injured, with one sustaining near-fatal stab wounds. After investigating the incident, prison officials concluded there was a significant likelihood of further hostility between members of the two gangs. Indeed, prison officials determined that the two groups had invoked a "kill on sight" policy, under which gang members were directed to kill any member of the other gang they encountered. Prison officials responded by placing associates and members of the two gangs in administrative detention pending conclusive evidence of their ability to function together in the general population without incident.

Using a ten-point classification system, prison officials classified Villarreal as a "suspected member" of the Mexikanemi gang based upon (1) his appearance in a group photograph with validated members of the gang, and (2) staff

2

observations of Villarreal associating closely with those same members. As a "suspected member" of the Mexikanemi gang, Villarreal was placed in administrative detention on February 15, 1996.

Members of both gangs remained in administrative detention until May 1, 1996, when four members from each gang were released in an effort to reintroduce the two groups into the general population. Shortly after their release into the general population, members of the two gangs engaged in another violent altercation. One prison staff member was stabbed twice in the hand while attempting to stop the altercation. Eventually, the entire institution was placed in "lock down" status and the inmates involved in the altercation were returned to administrative detention. After investigation, prison officials determined that the altercation was a direct result of the previous incident on February 14, 1996, and that any attempts to house the two groups together would likely result in further violence.

Villarreal, like the other gang members, remained in administrative detention during 1996 and 1997. On January 29, 1998, prison officials learned that the leaders of the two gangs had declared peace with each other. Based upon this information, prison officials began to incrementally release members of both groups from administrative detention into the general population. In addition, some members of both groups were transferred to other federal institutions.

3

Villarreal was transferred to the United States Penitentiary in Leavenworth, Kansas, on March 18, 1998.

Villarreal filed this action on June 26, 1997, approximately nine months prior to his transfer. In his complaint, he alleged that defendants violated his due process, equal protection, and Eighth Amendment rights by improperly classifying him as a suspected member of the Mexikanemi gang and placing him in administrative detention. Villarreal sought a transfer to another institution, removal of the "suspected member" classification from his prison records, and damages. Defendants filed a motion for summary judgment, as well as a motion to dismiss on qualified immunity grounds. The magistrate judge recommended that the motion for summary judgment be granted. Villarreal filed timely objections, but the district court granted summary judgment in favor of defendants.

## II.

We review a district court's grant of summary judgment de novo, applying the same legal standards utilized by the district court. See Byers v. City of Albuquerque, 150 F.3d 1271, 1274 (10th Cir. 1998). Under those standards, we determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. See Jenkins v. Wood, 81 F.3d 988, 990 (10th Cir. 1996). We view the evidence and the inferences that

4

can be drawn therefrom in the light most favorable to the nonmoving party. See id.

Turning first to Villarreal's procedural due process claim, we conclude the district court properly granted summary judgment in favor of defendants. It is beyond dispute that "lawfully incarcerated persons retain only a narrow range of protected liberty interests." Hewitt v. Helms, 459 U.S. 460, 467 (1983). Neither the Due Process Clause of the Constitution, nor the federal regulations governing placement of inmates in administrative detention, provide an inmate with a liberty interest in remaining in the general prison population. See Sandin v. Conner, 515 U.S. 472, 480, 484 (1995). Although a liberty interest can be created when a prisoner is subjected to restraint that places upon him "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," id. at 484, a review of the appellate record in this case demonstrates that Villarreal failed to provide the district court with any such evidence. Indeed, Villarreal's only argument on this point was that the duration of his confinement in administrative detention was sufficiently long to "cause a major disruption in [his] environment." Response to Recommendation at 4. Absent evidence that the actual conditions of confinement in administrative detention were dramatically different from those in the general population, we are unwilling to conclude that the duration of Villarreal's discretionary confinement, standing alone, triggered

5

any protected liberty interest. [1] See Sandin, 515 U.S. at 486-87.

We next turn to Villarreal's equal protection claim. In his complaint, Villarreal alleged he was classified as a "suspected member" of the Mexikanemi gang in part because he was Hispanic and, prior to his incarceration, resided in Texas. In their motion for summary judgment, however, defendants presented evidence demonstrating their classification decision was based exclusively on two factors: (1) Villarreal's appearance in a group photograph with validated members of the Mexikanemi gang, and (2) staff observations of Villarreal associating closely with those same members. In responding to the summary judgment motion, Villarreal made no attempt to controvert this evidence and, in fact, did not discuss the equal protection claim. Although Villarreal briefly discussed the equal protection claim in his objections to the magistrate judge's report and recommendation, he again made no attempt to controvert the defendants' evidence. Instead, he simply alleged "that many blacks and whites

---

[1] In his appellate brief, Villarreal alleges, for the first time, that during his confinement in administrative detention his telephone privileges were restricted and he was required to eat all of his meals alone in his cell. We conclude that such allegations, even if true, do not establish that the conditions of Villarreal's administrative detention were so different as compared with normal incidents of prison life as to give rise to a protected liberty interest. See Blum v. Federal Bureau of Prisons, 189 F.3d 477, 1999 WL 638232 at *3 (10th Cir. 1999) (table) (rejecting argument that restrictions on store privileges, telephone calls, and access to a radio during disciplinary segregation were sufficient to create a protected liberty interest).

6

ha[d] taken pictures with known gang member[s]" but "were not labeled or segregated." Response to Recommendation at 4. We have little trouble concluding that such conclusory allegations are insufficient to create a genuine issue of material fact concerning the reasons for Villarreal's classification as a suspected gang member. [2] The district court properly granted summary judgment in favor of defendants with respect to Villarreal's equal protection claim.

Villarreal also asserted in his complaint that his classification as a suspected gang member exposed him to the possibility of violence from other inmates. In the report and recommendation, the magistrate judge construed this as a claim that the classification constituted cruel and unusual punishment in violation of the Eighth Amendment. The magistrate and the district court ultimately concluded, however, that Villarreal failed to present sufficient evidence establishing that the classification decision was the product of deliberate indifference on the part of defendants. After reviewing the record on appeal, we agree. The uncontroverted evidence presented by defendants demonstrated that the decision to classify Villarreal as a suspected gang member, as with the more general decision to administratively detain gang members, was

---

[2] Even if true, these allegations would be insufficient to establish a legitimate equal protection claim. To actually establish that inmates of other races were similarly situated, Villarreal would have had to demonstrate such other inmates (1) were photographed with known gang members, and (2) were observed by staff members associating with known gang members.

dually motivated by defendants' interests in preventing further violent altercations and protecting inmates and staff members from injury. In our view, no rational trier of fact could reasonably conclude from this evidence that defendants were deliberately indifferent to Villarreal's safety. See generally Farmer v. Brennan, 511 U.S. 825, 844, 847 (1994) (holding prison officials are not deliberately indifferent if they respond reasonably to a threatened harm). Moreover, we note there is no evidence that Villarreal was actually harmed by any other inmates as a result of his classification. See Babcock v. White, 102 F.3d 267, 272 (7th Cir. 1996) (concluding that the "failure to prevent exposure to risk of harm," as opposed to the "failure to prevent harm," did not establish a cognizable Eighth Amendment claim). Thus, defendants were clearly entitled to summary judgment on the Eighth Amendment claim.

Lastly, Villarreal complains that the district court denied him the opportunity to engage in meaningful discovery. Because we conclude the district court properly dismissed the complaint on summary judgment, we also conclude that the district court did not err by denying Villarreal's requests for discovery. See Shifrin v. Fields, 39 F.3d 1112, 1114 n.2 (10th Cir. 1994).

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge