**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 25 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOHN HERMAN,

      Plaintiff-Appellant,

v.

DAVID DOVALA, Sheriff, in his
official capacity as Natrona County
Sheriff; WILLIAM H. SCHREFFLER,
Lieutenant, in his official capacity as a
Natrona County Sheriff's Officer,

      Defendants-Appellees.

No. 99-8054
(D.C. No. 97-CV-1063)
(D. Wyo.)

---

**ORDER AND JUDGMENT** *

---

Before **BALDOCK** , **HENRY** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant John Herman appeals from the district court's order granting summary judgment in favor of appellees on his complaint brought pursuant to 42 U.S.C. § 1983. We affirm.

Appellant and his fiancée, Dara Kinion, sought permission to marry while they were incarcerated together at the Natrona County Detention Center (NCDC) in Casper, Wyoming. Appellant was in pretrial detention and Ms. Kinion was awaiting transportation to Wyoming's state prison for women in Lusk. Ms. Kinion was eight months pregnant. Appellant asserted that he was the father of the child to be born and that his religious beliefs required him to be married to Ms. Kinion prior to the child's birth.

Appellee Schreffler responded to appellant's request as follows:

> Our Policy is and has been that we do not allow marriages within the facility or transport inmates to have a ceremony p[er]formed. Permitting marriages on demand would put a great burden on our resources and create security concerns that would greatly jeop[a]rdize the security of this facility and put officers in un[due] danger.

R. doc. 28, ex. 3.

Appellant thereafter brought this action, asserting violation of his right to marry under *Turner v. Safley*, 482 U.S. 78 (1987) and *Zablocki v. Redhail*, 434 U.S. 374 (1978), and violation of his First and Eighth Amendment rights. Appellees filed an initial motion for summary judgment, in which they asserted that their policy of prohibiting pretrial detainees from marrying was "entirely

-2-

reasonable and supported by legitimate penological objectives." R. doc. 17 at 3. This motion was supported by an affidavit from Lieutenant Schreffler justifying NCDC's policy against marriages at the facility. The district court denied this motion for summary judgment.

Just over a month before the scheduled trial date, appellees filed a renewed motion for summary judgment. In this motion, they asserted that appellant lacked standing to raise his claim because he had not obtained a marriage license as required under Wyoming law. [1] The district court granted the renewed summary judgment motion.

We review the district court's order of summary judgment de novo, applying the same standards that the district court applied. *See McKnight v. Kimberly Clark Corp*., 149 F.3d 1125, 1128 (10th Cir. 1998). Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[1] The second motion was supported by a supplemental affidavit from Lt. Schreffler. In this affidavit, he averred: "Had a marriage license been issued and plans previously arranged, my response [to appellant's request to be married] might have been different." R. doc. 28 at 3. We need not try to reconcile this new approach with the sweeping prohibition on marriage asserted in Schreffler's first affidavit. Our decision here would be the same even without this belated concession to the rights of prisoners.

Standing is a threshold requirement of any proceeding in federal court. *See Baca v. King* , 92 F.3d 1031, 1035 (10th Cir. 1996). At a minimum, the constitutional dimension of standing requires: (1) that the plaintiff suffered an injury in fact, an invasion of a legally protected interest; (2) that the injury is fairly traceable to the defendant's action which plaintiff challenges; and (3) that it is likely the injury will be redressed by a favorable decision. *See id.*

The summary judgment evidence shows that although appellant obtained an application for a marriage license, he never actually obtained the license.[2] Under Wyoming law, appellant could not have been married without a license. Wyo. Stat. § 20-1-103(a) (Lexis 1999). The Natrona County Clerk testified that she would not have granted appellant a marriage license unless either he or his fiancée appeared personally before her, or he obtained a court order waiving the personal appearance requirement.[3] Appellant satisfied neither of these criteria.

---

[2] Although appellant mistakenly stated in his answers to interrogatories that he had obtained a marriage license, he now appears to concede that he only obtained and completed an application form for the license, but never actually obtained it. *See* Appellant's Br. at 9, 13.

[3] Appellant does not assert that appellees were constitutionally required to transport him or his fiancée to the offices of the Natrona County Clerk. The Clerk is not a party to this action.

Nor does the evidence show that appellees affirmatively prevented appellant from obtaining the license. [4]

Appellant correctly states that he did not have to actually possess a license to have standing, so long as he retained some possibility of obtaining one. In *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), for example, a contractor seeking injunctive and declaratory relief challenged an allegedly racially discriminatory city housing ordinance. The contractor, MHDC, sought to construct a low-income housing project called Lincoln Green. The city argued that the contractor lacked standing. The Supreme Court disagreed, stating:

> An injunction would not, of course, guarantee that Lincoln Green will be built. MHDC would still have to secure financing, qualify for federal subsidies, and carry through with construction. But all housing developments are subject to some extent to similar uncertainties. When a project is as detailed and specific as Lincoln Green, a court is not required to engage in undue speculation as a predicate for finding that the plaintiff has the requisite personal stake in the controversy.

Id. at 261.

---

[4] Appellant claims the appellees moved his fiancée to Lusk to prevent the marriage, and she took the application for marriage license with her. He claimed that prison policy prevented him from writing to her about the application because they were not married. Appellees presented unrebutted evidence that they were obligated to transfer Ms. Kinion to Lusk. Appellant's claim falls short of an affirmative showing that appellees prevented appellant from obtaining the license.

In other words, even though the plaintiff in *Arlington Heights* did not show

that it had obtained all the requisite permits and approvals, and even though it had

not actually constructed the project, it still had standing to challenge the

discriminatory obstacle defendants had created that lay between it and the

ultimate goal of building a housing project. The plaintiff had standing because it

was still possible for it to obtain the required permits and approvals. Similarly,

appellant here had standing to seek prospective relief, so long as he could have

obtained a marriage license. Once appellant left NCDC in the fall of 1998,

however, his claim for prospective relief became moot. His remaining claim

for damages stood on quite a different footing. The question concerning standing

was no longer whether he *could* still obtain a marriage license, but whether he

*had* obtained one during the time period of his injury. [5] He had not.

---

[5]    In *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993), the Supreme Court addressed an argument that a petitioner challenging a minority business set-aside program lacked standing because he could not show that he would have been the successful bidder. The Supreme Court stated that in that case, the injury in fact was the denial of equal treatment from the imposition of the barrier, not the ultimate inability to obtain the benefit. *See id.* at 666. This court has explained that *Northeastern Florida* applies to cases where a plaintiff has been denied the opportunity to compete for a benefit on the basis of race or gender. *See Byers v. City of Albuquerque*, 150 F.3d 1271, 1276 (10th Cir. 1998). It does not have application to the circumstances of this case. *See Fulani v. Bentsen*, 35 F.3d 49, 54 (2d Cir. 1994) (holding *Northeastern Florida* did not apply where plaintiff would have been excluded from receiving benefit even if the defendants had taken the action she sought).

The harm for which appellant seeks relief, his inability to marry his fiancée while at NCDC, did not result from an action of the appellees. Rather, it was due to appellant's own failure to obtain a marriage license. Given this failure, appellant lacks standing to bring this action for damages. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 506 (1975) (holding that petitioners challenging Penfield, New York, zoning ordinance lacked standing because the evidence showed "that their inability to reside in Penfield is the consequence of the economics of the area housing market, rather than of respondents' assertedly illegal acts."); *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (holding that white male police officers lacked standing to challenge allegedly discriminatory changes in promotional process, where they would not have made the original proposed promotional list even absent the challenged changes); *cf. Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166-67 (1972) (holding African-American lacked standing to challenge lodge's refusal to allow African-Americans to become members when he never applied for membership).

Appellant also brings procedural challenges to the district court's order. He contends that appellees waived the standing defense by failing to raise it until their renewed summary judgment motion. Standing is, however, a jurisdictional defense that may be raised at any time. *See Buchwald v. University of N.M. Sch. of Med.*, 159 F.3d 487, 492 (10th Cir. 1998). We therefore reject this contention.

-7-

Finally, appellant contends that the district court erred by allowing appellees to file an untimely summary judgment motion asserting lack of standing, which was not served on him in a timely manner. Given the district court's obligation to inquire into standing and the jurisdictional nature of its determination, the district court did not abuse its discretion by considering the motion, even if it was untimely. To the extent appellant claims he was deprived of time for adequate research or preparation by what he calls appellees' procedural "machinations," he fails to show what additional evidence or argument he could have presented that would have achieved a different result.

The judgment of the United States District Court for the District of Wyoming is therefore AFFIRMED.

Entered for the Court


Michael R. Murphy
Circuit Judge