**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 1 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CITY MARKET, INC.,

    Plaintiff/Counter-
    Defendant-Appellee,

    v.

LOCAL 7 UNITED FOOD AND
COMMERCIAL WORKERS
INTERNATIONAL UNION,

    Defendant/Counter-
    Claimant-Appellant.

No. 03-1235

District of Colo.

(D.C. No. 02-CS-1526 (BNB))

---

**ORDER AND JUDGMENT** *

---

Before **TYMKOVICH** , Circuit Judge, **McWILLIAMS** , and **PORFILIO** , Senior
Circuit Judges.

---

    Plaintiff-Appellee City Market, Inc. ("City Market"), a grocery store

operator, and Appellant United Food & Commercial Workers International Union,

Local No. 7 entered into a  collective bargaining agreement ("CBA") which

provides that only Union members may work in City Market's meat department.

---

    *This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After City Market hired a non-Union meat-cutter to fill in several hours at its Grand Junction, Colorado store, the Union brought a grievance that was eventually resolved by an arbitral award in its favor. City Market challenged the arbitrator's decision in federal district court, which granted summary judgment to City Market and vacated the award. Accepting jurisdiction under 28 U.S.C. § 1291, we reverse.

## I. Background

The facts of this case are not in dispute. The CBA defines Union members' rights to salary, life insurance, sick leave, vacations, health coverage, pension, overtime pay, lunch breaks, and seniority. In addition, Article 2, Section 3 of the CBA provides that "[a]ll work performed in the meat department and delicatessen department will be done by members of the bargaining unit." Aplt. App. at 54.

Article 50 of the CBA establishes a procedure for resolving disputes. Aplt. App. at 85. In particular, Article 50 provides as follows:

> Section 136. Should any dispute or complaint arise over the interpretation or application of this CBA, there shall be an earnest effort on the part of the parties to settle such promptly through the following steps . . . .
>
> Section 137. Step 1. By conference during scheduled working hours between . . . the Union's Business Representative and the aggrieved employees and the Manager of the store. . . .
>
> Section 138. Step 2. If the grievance cannot be satisfactorily resolved under Step 1 above, the grievance shall be reduced to writing and submitted to the representative designated by the

Employer to handle such matters. . . . The Employer designee and the Union Business Representative shall meet within ten (10) days after receipt of written notice of the grievance and attempt to resolve the grievance. . . .

Section 139. Step 3. If the grievance is not satisfactorily adjusted in Step 2, either party may . . . request arbitration and the other party shall be obliged to proceed with the arbitration . . . .

\*\*\*

Section 141. The arbitrator shall have all the rights, powers, and duties herein given, granted and imposed upon her; but her award shall not change, alter or modify any of the terms and conditions set forth in this CBA. . . .

\*\*\*

Section 143. If an error is made by the Employer in the application of the provisions of this CBA resulting in a lost work opportunity for the aggrieved employee such as . . . scheduling and assignment of hours disputes . . . the employee shall be made whole by being permitted to work the number of hours lost.

In 2001, two meat cutters were scheduled to work at City Market store #418 in Grand Junction. After one of them went on vacation, the Meat Market Manager tried unsuccessfully to locate a Union-represented employee to fill in the additional hours and eventually decided to use a non-Union meat cutter. The Union then filed a grievance on behalf of one of its members, Chris Spangler, even though Spangler was not a qualified meat cutter and had not been available to work the additional hours in any case. After Steps 1 and 2 failed to resolve the dispute, the parties submitted to arbitration. On July 22, 2002, Arbitrator Thomas Watkins issued an award finding that City Market had violated Article 2, Section 3 of the CBA by assigning the additional hours to a non-Union employee. As a

remedy, Arbitrator Watkins instructed City Market to reimburse the Union, or a member designated by the Union, an amount equal to the number of hours worked by the non-Union meat cutter.

City Market then challenged the award in federal district court. The matter was assigned by agreement to a magistrate judge. Conceding that the arbitrator did not go beyond his discretion in finding that it had violated Article 2, Section 3, City Market argued instead that Section 143 provides the exclusive remedy in cases involving lost work opportunities, and that Arbitrator Watkins, by fashioning a remedy not permitted under Section 143, had exceeded his authority under the CBA. The magistrate judge agreed, granted summary judgment to City Market, and vacated the award. The Union then brought this appeal.

## II. Analysis

We review a grant of summary judgment de novo and apply the same legal standard as the district court. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we view the evidence in the light most favorable to the nonmoving party. *Byers*, 150 F.3d at 1274.

"Our review of arbitral awards is among the narrowest known to the law." *Litvak Packing Co. v. United Food & Commercial Workers, Local Union No. 7*, 886 F.2d 275, 276 (10th Cir. 1989). We must enforce any award that draws its essence from the collective bargaining CBA. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). Nonetheless, an arbitrator may not dispense his own brand of industrial justice. *Enterprise Wheel*, 363 U.S. at 597. An award does not draw its essence from the agreement if "it is contrary to the express language of the contract . . . or . . . is so unfounded in reason and fact, so unconnected with the wording and purpose of the agreement as to manifest an infidelity to the obligation of the arbitrator . . . [or] if viewed in the light of its language, its context, and any other indicia of the parties' intention, it is without rational support." *Mistletoe Express Serv. v. Motor Expressmen's Union*, 566 F.2d 692, 694 (10th Cir. 1977) (internal quotations and citations omitted).

We apply this rigorous standard to the sole issue in this case: whether Arbitrator Watkins fashioned a remedy that went beyond the essence of the CBA. In the Tenth Circuit, an arbitrator has broad discretion to fashion an appropriate

remedy for breach of a collective bargaining agreement. *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 939 (10th Cir. 2001). City Market contends, however, that because Section 143 of the CBA provides the exclusive remedy in this case, Arbitrator Watkins's discretion was limited to granting a Section 143 remedy, namely, to permit the aggrieved employee to work the lost hours. We disagree.

Article 2, Section 3 provides that "[a]ll work performed in the meat department and delicatessen department will be done by members of the bargaining unit." As Arbitrator Watkins put it, "it is clear that the Employer's discretion [in hiring meat cutters] is limited to bargaining unit members. . . . The language is plain on its face." Aplt. App. at 106. In other words, by the plain terms of Article 2, Section 3, City Market cannot hire a non-union meat cutter *even if no Union-affiliated meat cutter is available*. It is therefore possible for an Article 2, Section 3 violation to occur even if no Union member loses a work opportunity.[1]

That is exactly what happened in this case. In its initial grievance, the Union admitted that Spangler was "not eligible for the work in question" but

---

[1] The arbitrator recognized in his decision that the company could be excused from a CBA violation if it genuinely anticipated labor shortages and took steps to identify bargaining unit members who could work the available hours. Decision, at 8. In those circumstances, if no member were available, the company could use non-Union workers.

nonetheless argued that the "bargaining unit as a whole" was entitled to a remedy because it "ha[d] suffered as a result of this [Article 2, Section 3] violation." Aplt. App. at 103. The remedy to which it was entitled was not covered by Section 143. Section 143 covers only "error[s] . . . resulting in a lost work opportunity for the aggrieved employee." To paraphrase, it stipulates that *if* an aggrieved employee has lost a work opportunity, *then* he shall be allowed to work the lost hours. Here, no lost work opportunity resulted from the Article 2, Section 3 violation. Therefore, Section 143 does not apply to the particular facts of this grievance.

Nothing in Section 143, in other words, requires us to conclude that it defines the only possible remedy under the CBA for this grievance. A lost work opportunity is plainly not the only type of grievance that can arise under the CBA; disputes over salary, life insurance benefits, sick leave, jury duty, vacations, overtime, lunch breaks, and seniority—to name just a few—might all conceivably arise under the CBA, go to arbitration, and require a remedy other than that described in Section 143. Section 143 is silent on the question of what to do when a violation has *not* resulted in a lost work opportunity. Its narrow focus, if anything, underscores rather than limits the arbitrator's broad discretion to fashion a suitable remedy under the CBA.

We find that the grievance in this case is among the possible Article 2, Section 3 violations that are not covered by Section 143. As City Market points out, no work opportunity was ever lost. Spangler himself was not a meat-cutter and was not available to work the additional hours in any case. Section 143, therefore, does not define the appropriate remedy; consequently, it did not limit Arbitrator Watkins's broad discretion to fashion a suitable remedy under other provisions of the CBA.

The cases on which City Market relies do not undercut our conclusion. In *Poland Spring Corp. v. United Food and Commercial Workers Int'l Union, AFL-CIO-CLC, Local 1445*, 314 F.3d 29 (1st Cir. 2002), for example, the arbitrator found that a discharged employee had committed insubordination; yet, despite that the collective bargaining agreement expressly made insubordination grounds for discharge, he reinstated the employee on the grounds that "insubordination" under the agreement somehow did not include "insubordination with mitigating circumstances." Finding that the arbitrator had violated his obligation to the parties by substituting his own brand of industrial justice, the First Circuit upheld the district court's entry of summary judgment vacating the award. Here, by contrast, Arbitrator Watkins did not attempt any such "end-run around the clear and unambiguous restrictive terms of the contract." *Anheuser-Busch, Inc. v. Local Union No. 744, Int'l Bhd. of Teamsters*, 280 F.3d 1133, 1136 (7th Cir.

2002).  The only language in the CBA potentially limiting his discretion to fashion a remedy was Section 143.  As we have shown, however, Section 143 does not provide the exclusive remedy for grievances on these facts.

Accordingly, we REVERSE the decision of the district court, and REINSTATE the arbitral award.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge