**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 6, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROSA L. ESSARY,

       Plaintiff-Appellant,

v.

FEDERAL EXPRESS
CORPORATION,

       Defendant-Appellee.

No. 05-2091
(D.C. No. CIV-03-961-MV/ACT)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **BRORBY**, and **McCONNELL**, Circuit Judges.

---

Rosa Essary appeals the district court's grant of summary judgment

dismissing her employment discrimination action against her former employer the

Federal Express Corporation ("FedEx"). Because we conclude that Essary's only

argument on appeal is based on a theory not raised before the district court, we

**AFFIRM.**

Essary, a Caucasian woman, began working for FedEx in 1986 as a

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. The court generally disfavors the citation of
orders and judgments; nevertheless, an order and judgment may be cited under the terms
and conditions of 10th Cir. R. 36.3.

customer service agent in Oklahoma City, Oklahoma.  Twelve years later she was

offered a management position in Albuquerque, New Mexico.  She took the

position, and in October 1998 assumed responsibility for a group of customer

service agents.  For the first ten months, Essary discharged her new

responsibilities without attracting criticism from upper management.  When these

ten months ended, Essary's performance began an ultimately fatal decline.

In July 1999, Essary received her first criticism from upper management –

a "Documented Counseling" – for failing to ensure her employees' compliance

with a safety program.[1]  One month later, Essary received a second Documented

Counseling for failing to meet her budget goals.  Three months after that, Essary

was caught using another employee's identification number to sign into the FedEx

computer system.  Essary was found doing so again shortly thereafter.

Essary's performance declined to such an extent that employees complained

directly to the Albuquerque station's regional supervisor, Wendell Beckles.

These complaints, and concerns about the station in general, prompted Beckles to

---

[1] FedEx employees are subject to three levels of warnings.  Minor performance
issues receive the most lenient warning – a "Documented Counseling" – which
are not considered punitive in nature.  More serious performance problems are
met with a written "Performance Reminder" or a "Warning Letter."  A
"Performance Reminder" is issued to an employee for unacceptable performance
and stays in the employee's file for six months.  A "Warning Letter" – the
severest of FedEx sanctions short of termination – stays on file for a year, and
accumulation of three Warning Letters within a twelve month period results in
automatic termination.

travel to Albuquerque himself to investigate the situation. After interviewing more than half the Albuquerque employees, Beckles made several personnel decisions. He fired Essary's direct supervisor, issued a Warning Letter to another supervisor, and issued Essary her first Warning Letter on October 23, 2000.[2] Having fired the station's senior manager, Beckles promoted one of the six operations managers, Melinda Baca, a Hispanic female, to the position.

The internal review procedure which triggered the retaliatory termination alleged in this suit began when Essary wrote a letter to Adam Psarianos, Regional Vice President, in February 2001 (the "EEO Letter"), in which she complained that she was unfairly singled out by Beckles in his review of the Albuquerque station. The thrust of the four-page single-space letter was that other managers who did not receive Warning Letters suffered from as many, if not more, of the "management problems" as she did. After cataloguing the faults of her colleagues and lamenting her own lack of proper training, Essary wrote only one short paragraph opining that one of the reasons for this unequal treatment may have been Beckles' knowledge of her "lifestyle." The EEO Letter provides in pertinent

---

[2] The Warning Letter listed six specific management problems:
    a. Improperly coded employee timecards,
    b. Failure to follow policy and procedure concerning internal promotions,
    c. Improper scheduling practices,
    d. Lack of training for specific duties/responsibilities,
    e. Holding inadequate work group meetings, and
    f. Demonstrating a lack of respect when dealing with employees.

part:

> During one of Wendell Beckels's visits to the [Albuquerque] station, he made mention to me that he was aware of 'my lifestyle.' Another of this statements [sic] was that he was going to 'clean house.' In that my Senior Manager [sic], Don Firestone had used the same language with regards to my terminating employees with attendance problems, leads me to believe this is a catch phrase used by FedEx. I would like clarification as to FedEx's definition of the catch phrase 'my lifestyle' as referenced by Mr. Beckel. Shortly thereafter, I found myself on suspension and in the middle of an investigation; apparently over 'my lifestyle.' I feel strongly that this is an area which needs to be looked at in depth by FedEx, as it would appear to be a blatant disregard of my rights.

Nowhere in the EEO Letter did Essary complain that she was singled out because she was older, a woman, or for being a member of any protected class.

The EEO Letter was assigned to a human resources compliance advisor for review who recommended that Essary's Warning Letter be reduced to a Documented Counseling, and that Beckles be disciplined for, in part, "inconsistent treatment of employees." After this recommendation was adopted, an "EEO Closure" letter was issued directing both actions. The record does not reflect, however, why Essary's Warning Letter was not reduced, nor why Beckles did not receive any discipline.

In the time following the EEO Letter, Essary's managerial performance worsened. She received her second Warning Letter on February 6, 2001 for making inappropriate comments about an employee in front of other employees. Many lesser sanctions followed thereafter. Essary received six additional

Documented Counselings, a memo from her supervisor stating that Essary had underpaid an employee, and an email from an airport ramp manager complaining that the documentation on the containers leaving the Albuquerque station was missing or inaccurate. Four more Documented Counselings soon followed detailing more container documentation problems, a failure to correct problems relating to missing supplies, and the making of inappropriate comments about a subordinate in front of other employees. When Essary was caught once again entering inaccurate timecards for a subordinate, she received her third and final Warning Letter on July 16, 2001. Pursuant to the policy requiring the termination of any employee who receives three Warning Letters in one twelve-month period, Essary was terminated that same day.

Essary appealed her termination to FedEx. A hearing was held at which she was afforded the opportunity to present her side of the story to Beckles. Beckles upheld the third Warning Letter and the termination. This decision was then reviewed by Psarianos, and after initially deciding to uphold Essary's termination, he reversed Beckles' decision on the basis of Essary's long history of service at FedEx. Psarianos determined, however, that Essary should not be returned to a management position and made an offer to reinstate Essary in a part-time service agent position or in a full-time courier position at the Santa Fe station. Essary declined both offers.

Following her termination, Essary filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of gender and age, and alleging that her termination was the product of retaliation for her internal FedEx complaint. A right to sue letter was issued by the EEOC determining that probable cause existed to support these claims. Notably, the EEOC characterized Essary's retaliation claim as one flowing from a complaint of gender discrimination.

Suit in federal district court then followed in which Essary alleged gender discrimination in violation of § 703(a) Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a), age discrimination in violation of § 4 of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a), and retaliation for making a complaint of gender discrimination in violation of § 704 of Title VII, 42 U.S.C. § 2000e-3(a). FedEx moved for summary judgment. In her response, Essary withdrew her age discrimination claim. The district court granted summary judgment to FedEx on the remaining claims, finding that Essary failed to carry her burden that her termination was pretext for discrimination, and that Essary's EEO letter did not qualify as "protected activity" for purposes of retaliation under Title VII because it only "made vague references to unequal treatment without any specific allegations of discrimination." Essary appeals only the district court's dismissal of her retaliation claim. We have jurisdiction under

18 U.S.C. § 1291.

We review the district court's grant of summary judgment de novo, and we apply the same standards used by the district court. Byers v. City of Albuquerque, 150 F.3d 1271, 1274 (10th Cir.1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the nonmoving party. Byers, 150 F.3d at 1274.

In her opposition to summary judgment, Essary argued that she was terminated in retaliation for complaining that she was the victim of gender discrimination. On appeal, Essary contends for the first time that she was fired in retaliation for complaining of sexual orientation or "sex stereotyping" discrimination, not gender discrimination. FedEx insists that this is a new theory that must be disregarded on appeal. We agree.

Our circuit "generally will not consider an issue raised for the first time on appeal." Tele-Communications, Inc. v. C.I.R., 104 F.3d 1229, 1232 (10th Cir. 1997). This rule is particularly apt when dealing with appeals from grants of summary judgment "because the material facts are not in dispute and the trial

judge considers only opposing legal theories." Anschutz Land and Livestock Co., Inc. v. Union Pacific Railroad, 820 F.2d 338, 344 n.5 (10th Cir. 1987). We "require[] that an issue be presented to, considered [and] decided by the trial court" before it can be raised on appeal. Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 721 (10th Cir. 1993) (internal citations and quotations omitted). Determining what questions may be raised for the first time on appeal is soundly within the discretion of the reviewing court. Singleton v. Wulff, 428 U.S. 106, 121 (1976).

The only defense Essary offers to the charge that she is arguing a new theory on appeal is an assurance that the district court "passed" on the sexual orientation retaliation claim in its opinion dismissing her case. She supports this assurance with a citation to the following paragraph of the district court's opinion:

> The factual basis for Plaintiff's retaliation claim is the warning letters and termination that followed her internal EEO Complaint. In her letter to Mr. Psarianos, Plaintiff stated that she was being treated unfairly as she was "the only manager being held accountable" for problems experienced by all of the managers. Plaintiff also mentioned that she felt that she was being singled out for her "lifestyle." In a Privileged and Confidential Inter-Office Memorandum sent by Mr. Psarianos to Ms. Leslie Coleman, he summarized Plaintiff's complaints as follows: 'Employee feels that she has been discriminated against on the basis of her sexual preference.' Gender discrimination is not mentioned at all.

Essary's interpretation of this passage is unrealistic. The mere fact that the

district court described a FedEx memorandum which mentions "sexual preference" discrimination does not mean that the court considered and decided the issue of whether Essary was fired for engaging in protected opposition to sexual orientation discrimination. Such "vague, arguable references to [a] point in the district court proceedings," do not constitute the requisite presentation, consideration, and decision by the trial court necessary to preserve an issue for appeal. Lyons, 994 F.2d at 721 (internal citations and quotations omitted).

Nor are we prepared to accept that Essary's new retaliation theory argues the same "issue" as her old retaliation theory. This new theory was neither alleged in the complaint nor argued in opposition to summary judgment. The first opportunity FedEx had to rebut the claim that Essary was complaining about retaliation for sexual orientation discrimination was in its answer brief on appeal. Although we acknowledge that the statutory violation alleged at the trial court and on appeal are identical, § 704 of Title VII, it was for FedEx to decide whether to offer the same evidence to rebut the new retaliation claim as it did for the claim below. FedEx was also entitled to decide whether to mount a different legal defense given that sexual orientation discrimination is not a recognized cause of action under Title VII and that it is far from clear whether a retaliation claim may be predicated upon a non-cognizable cause of action. See Medina v. Income Support Div., New Mexico, 413 F.3d 1131, 1135 (10th Cir. 2005) ("Title VII does

not afford a cause of action for discrimination based upon sexual orientation.") (internal quotation and citation omitted). In any event, our cases establish that we need not speculate about what arguments a party may or may not have made in hypothetical defense to a new theory on appeal. See Wulff, 428 U.S. at 120 ("We have no idea what evidence, if any, petitioner would, or could, offer in defense of this statute, but this is only because petitioner has had no opportunity to proffer such evidence. Moreover, even assuming that there is no such evidence, petitioner should have the opportunity to present whatever legal arguments he may have in defense of the statute.").

Because the only question before this court is whether the district court properly granted summary judgment to FedEx on the retaliation claim, our conclusion that Essary did not preserve her new sexual orientation retaliation claim for review vitiates her appeal. With no preserved issues before this court, the judgment of the district court is **AFFIRMED**.


Entered for the Court


Carlos F. Lucero
Circuit Judge